**Joan MITCHELL, in her own right and as next friend and mother of Anthony W. Mitchell, Plaintiffs,**

v.

**Franklin B. WALTER, in his official capacity as Superintendent of Public Instruction of the State of Ohio; et al., Defendants.**

No. C–2–81–1202.

United States District Court, S. D. Ohio, E. D.

May 14, 1982.

Dennis Cichon, Clement W. Pyles, Ohio Legal Rights Service, Columbus, Ohio, for plaintiffs.

Richard W. Ross, Asst. Atty. Gen. of Ohio, Lawrence H. Braun, William L. Millard, Columbus, Ohio, Michael G. Spahr, Pros. Atty., James E. Schneider, Asst. Pros. Atty., Washington County, Ohio, for defendants.

OPINION AND ORDER

KINNEARY, District Judge.

This civil action was filed by Joan Mitchell in her own right and on behalf of her son Anthony Mitchell, a nine year old boy who is handicapped by hearing impairment and severe behavioral disturbances. Plaintiffs seek redress for the alleged failure of the defendant state and local educational au-

thorities to place Anthony Mitchell in a 24-hour residential educational program. This matter is before the Court on plaintiffs' motion for a preliminary injunction and defendants' motion to dismiss pursuant to Rule 12(b), Federal Rules of Civil Procedure.

In their first amended complaint plaintiffs set forth claims arising under three separate statutory schemes. First, plaintiffs claim that Anthony Mitchell is being denied his right to a free appropriate public education under the Education for All Handicapped Children Act [EAHCA], 20 U.S.C. §§ 1401 et seq., and various federal regulations and state law provisions in accordance therewith. Second, plaintiffs claim a violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which prohibits the exclusion of a qualified individual from participation in any federally funded program on account of his handicap. Finally, plaintiffs assert claims under the Civil Rights Act of 1871, 42 U.S.C. § 1983, for violation of Fourteenth Amendment rights of due process and equal protection. Defendants' motion to dismiss is based primarily on the plaintiffs' failure to exhaust administrative remedies. The Court concludes that defendants' motion is meritorious and dispositive of the issues raised at this stage of the proceedings.

### I. The EAHCA Claim

#### A. Exhaustion of Administrative Remedies Generally

The Education for All Handicapped Children Act, 20 U.S.C. §§ 1401 et seq., was enacted in 1975 to make federal grants available to the states for the provision of educational services to handicapped children. In order to qualify for federal assistance, a state must meet a number of requirements. Central among these is the requirement that the state and local education agencies maintain "a policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. § 1412(1).[1]

In addition, the Act requires any state that receives federal assistance under the funding plan to establish and maintain certain procedures by which the parents or guardian of a handicapped child may challenge the evaluation and placement of the child by the local education agency. A state must provide "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(1)(E). Upon the registering of a complaint, the parents or guardian must be afforded the right to an "impartial due process hearing," 20 U.S.C. § 1415(b)(1)–(2), at which the parties have the right to be represented by counsel, to present evidence and confront, cross-examine, and compel the attendance of witnesses, to receive a record of the hearing, and to receive written findings of fact and decisions. 20 U.S.C. § 1415(d). When a due process hearing is conducted by a local agency, any party must have the opportunity to appeal the findings and decisions rendered in such a hearing to the state education agency for impartial review. 20 U.S.C. § 1415(c). The State of Ohio has given operational effect to these extensive procedural safeguards by enacting section 3323.05 of the Ohio Revised

---

1. The term "free appropriate public education" is defined in the EAHCA as

   special education and related services which (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the state involved, and (D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title.

   20 U.S.C. § 1401(18). An "individualized education program" [IEP] is a written statement developed by school personnel and the child's parent or guardian that includes, among other things, a statement of educational goals for the child, a description of the specific educational services to be provided, and evaluation procedures for determining whether instructional objectives are being achieved. 20 U.S.C. § 1401(19). The IEP is required to be reviewed or revised at least annually. 20 U.S.C. §§ 1412(4), 1414(a)(5). See also 34 C.F.R. §§ 300.4 and 300.340 et seq. (1981).

Code, which adopts the federal procedural scheme in substantially identical terms and authorizes the state department of education to promulgate regulations to carry it out.

Finally, the Act provides for judicial review of administrative actions by conferring a private right of action to obtain judicial relief *after* an administrative record has been established:

> Any party aggrieved by the findings and decision made [pursuant to the impartial due process hearing or an impartial review conducted by the state education agency] shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any state court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(e)(2).

It is now well established that the EAHCA requires the parents or guardian of a handicapped child to exhaust state administrative remedies, including the administrative appeal provisions, before bringing an action in federal court to challenge the evaluation and placement of a child. That Congress intended the local and state educational agencies to address such disputes in the first instance is made evident by the language of the statute itself, which expressly creates a right of action for a "party aggrieved by the findings and decision" reached through the administrative process, and directs that the court "shall receive the records of the administrative proceedings." *Id.* In explaining the purpose of the exhaustion requirement under the EAHCA, the Second Circuit Court of Appeals has identified two important interests to be served:

> First, a "strong State interest is reflected in the establishment of a comprehensive scheme of regulation; authority over the subject matter of the dispute has been vested in an expert supervisory body, far more familiar than a Federal court with local factors that legitimately affect administration." [Citation omitted.] If the expert agency cannot resolve the problem finally, the record made in the administrative proceedings will be extremely helpful to the court, since the administrative agency will likely have probed the issue with more expertise than a Federal court could bring to bear, and therefore, have illuminated the issue for final decision in the Federal court. * * *

> Second, the "States, as well as the federal government have an interest in providing a means whereby official abuse can be corrected without resort to lengthy and costly trial." [Citation omitted.] Resort to administrative processes is a desirable alternative to litigation in the Federal courts.

*Riley v. Ambach,* 668 F.2d 635, 640 (2d Cir. 1981). *See also Ezratty v. Commonwealth of Puerto Rico,* 648 F.2d 770 (1st Cir. 1981); *Scruggs v. Campbell,* 630 F.2d 237 (4th Cir. 1980); *Ruth Anne M. v. Alvin Independent Sch. Dist.,* 532 F.Supp. 460 (S.D.Tex.1982); *Akers v. Bolton,* 531 F.Supp. 300 (D.Kan. 1981); *Doe v. Anrig,* 500 F.Supp. 802 (D.Mass.1980); *Rose v. State of Nebraska,* 530 F.Supp. 295 (D.Neb.1981); *Harris v. Campbell,* 472 F.Supp. 51 (E.D.Va.1979); *Stubbs v. Kline,* 463 F.Supp. 110 (W.D.Pa. 1978). The fact that Congress has created a private right of action to challenge the placement of a handicapped child and has extended federal court jurisdiction to hear such cases exhibits a strong policy of protecting every child's interest in the full benefits of equal educational opportunities. At the same time, however, it is evident that strong local, state, and federal interests favor the exhaustion of all state agency procedures before the federal courts are

called upon to act as "super superintendent of schools."[2]

The plaintiffs here do not deny their failure to request a due process hearing on the matter of Anthony Mitchell's educational placement from the appropriate local educational agency. Rather, they advance two grounds why exhaustion should not be required in this case. First, plaintiffs assert that maintenance of the status quo during the pendency of administrative proceedings will cause Anthony irreparable harm due to the fact that he is not currently receiving any public education at all, "appropriate" or otherwise.[3] Second, plaintiffs assert that the pursuit of administrative remedies in this case would be futile because the state department of education has already determined that the State of Ohio is not required to provide 24-hour residential programs under any circumstances. The Court will consider these two contentions in turn.

### B. The Hardship Exception

In general, courts have been reluctant to excuse exhaustion requirements on the basis of alleged hardship. In the leading case cited by the plaintiffs, *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1968), the Supreme Court recognized a hardship exception to the exhaustion of remedies doctrine in the area of the selective service laws. *McKart* involved a criminal prosecution for failure to report for induction. The defendant in that case attempted to raise an issue relating to his draft eligibility that should properly have been raised before the local selective service board. At the stage in the proceedings when the government raised the exhaustion of remedies doctrine, the possibility of defendant's obtaining administrative relief was entirely foreclosed, and defendant was

facing trial on a felony charge carrying a possible sentence of five years imprisonment. Even under these extreme circumstances, which bear little resemblance to the case at bar, the Supreme Court excused the defendant's failure to exhaust administrative remedies only after determining that the interests underlying the exhaustion doctrine would not be furthered by enforcement under the circumstances. Specifically, the Court found that the unexhausted issue was purely one of statutory construction, the resolution of which did not require any special expertise on the part of the administrative agency; that judicial review of the matter would not be significantly aided by administrative findings; and that there was little danger of inducing other selective service registrants to bypass available administrative procedures. *Id.* at 199–200, 89 S.Ct. at 1665–66.

The case at bar presents a starkly different set of circumstances. The basic issue that plaintiffs seek to adjudicate in this action, i.e., what constitutes an "appropriate free public education" for Anthony Mitchell, is fraught with exceedingly complex factual issues that require considerable expertise for proper resolution. Judicial review of this matter, should it become ultimately necessary, will be greatly facilitated by the record produced at administrative proceedings. Under these circumstances, the interests served by exhaustion weigh very heavily.

The Court also notes that plaintiffs could have initiated the administrative process for resolving this dispute long ago, and to the extent that they now face hardship, this circumstance is largely of their own making. In Paragraph Twenty-three of the amended complaint, plaintiffs allege that

2. *Grkman v. Scanlon*, 528 F.Supp. 1032, 1032 (W.D.Pa.1981).

3. Plaintiffs allege that Anthony Mitchell is currently placed as an inpatient at Ohio State University Hospital's Upham Hall, Childrens' Psychiatric Ward, on a five day per week basis, at cost to his parents; that he is transported by his parents to his home in Whipple, Ohio, on weekends; and that he is receiving no public educational services of any kind. First Amend-

ed Complaint ¶ 36. It is alleged that this placement will be terminated in the near future by Upham Hall administrators. *Id.* It is further alleged that the Ohio School for the Deaf has offered to provide programming for Anthony for two hours per day, five days per week at public expense, but refuses to provide residential care and refuses to provide transportation to and from the school. *Id.* at ¶ 35.

the Marietta City Schools failed to provide Anthony with an appropriate educational placement in the fall of 1977. In Paragraphs Twenty-seven and Twenty-eight, plaintiffs allege that Anthony was dismissed from the Marietta City Schools' hearing-impaired program on November 10, 1980, and placed on home instruction, which was discontinued in February of 1981. It is clear that Anthony's parents could have challenged each of these changes in Anthony's placement and could have demanded a due process hearing for a determination of an appropriate educational placement at those times; and, of course, they still can. Nevertheless, plaintiffs offer no explanation for their failure to do so. The Court finds it difficult to conclude that plaintiffs should now be excused from exhausting administrative remedies because of an "emergency." *Cf. Seepe v. Department of the Navy,* 518 F.2d 760, 765 (6th Cir. 1975). Moreover, once the right to a due process hearing is invoked, the time that plaintiffs must wait for a decision is relatively brief. State regulations currently require the decisions resulting from the local hearing and state level review to be rendered within sixty days respectively. Ohio Admin. Code § 3301–51–16–(D)(4)–(5). Newly enacted regulations effective in July 1982 require even more expeditious resolution.[4] Based on all these circumstances, the Court finds that plaintiffs have failed to demonstrate the existence of a hardship or emergency that would permit a premature assertion of jurisdiction to hear their claim under the EAHCA.

### C. The Futility Exception

An exception to the exhaustion requirements under the EAHCA has been recognized in cases where the exercise of state administrative remedies would be futile. *See Ezratty v. Commonwealth of Puerto Rico,* 648 F.2d 770 (1st Cir. 1981); *Riley v. Ambach,* 668 F.2d 635 (2d Cir. 1981); *Monahan v. Nebraska,* 645 F.2d 592 (8th Cir.

1981); *Armstrong v. Kline,* 476 F.Supp. 583 (E.D.Pa.1979), *remanded on other grounds sub nom. Battle v. Commonwealth of Pennsylvania,* 629 F.2d 269 (3d Cir. 1980). In such cases, "[t]he dispute over exhaustion reduces to one issue: whether there is a meaningful administrative enforcement mechanism for the vindication of personal rights .... It is a well recognized principle of administrative law that exhaustion is not required if the only available administrative remedy is plainly inadequate." *Riley v. Ambach,* 668 F.2d 635, 641 (2d Cir. 1981) (citation omitted).

Plaintiffs allege that exhaustion would be futile in this case because the Ohio State Board of Education has already determined that the local boards of education need not provide 24-hour residential placement to any handicapped child in Ohio. In support of this allegation, which is strongly disputed by the state defendants, plaintiffs have proffered a copy of an advisory memorandum from Franklin B. Walters, Superintendent of the Ohio Department of Education, which is dated November 13, 1980, and addressed to the superintendents of all Ohio city and county boards of education. In that memorandum is contained the following language:

*24-Hour Residential Care*

There is continuing discussion as to whether or not 24-hour residential care is mandated as a related service under Public Law 94–142. It is the position of the Ohio Department of Education that it is possible to provide an appropriate educational program for any handicapped child regardless of the severity of the handicap on a day school basis. If 24-hour residential care is required, the need would emerge out of non-educational needs. School districts are therefore advised that they have no obligation to provide 24-hour residential care and are not obligated to pay for such care.

---

4. *See* Reg. 3301–51–02(G) (not yet codified), attached as exhibit A–4 to Reply Memorandum of State Defendants, which requires the local hearing decision to be rendered within 45 days

of receipt of the request for a hearing, and the state level review decision to be rendered within 30 days after receipt of the appeal.

School districts should note that if the assessment data indicates that 24-hour residential care is required in order to provide a free Appropriate Public Education and 24-hour residential care is included in the child's IEP, the school district would be required to provide this service.

Exhibit E, attached to plaintiffs' Motion for Preliminary Injunction.

Upon examining this evidence, the Court must agree with the defendants that Superintendent Walters' memorandum cannot be realistically viewed as proof of an administrative predetermination against providing Anthony Mitchell with 24-hour residential care. While the first paragraph of the above quoted excerpt does indicate that the Ohio Department of Education in November of 1980 held a general position that 24-hour residential care is not required under the EAHCA regardless of the severity of a child's handicap, the second paragraph clearly shows a recognition on the part of the department that a local school district *would* be required to provide 24-hour residential care if an individual child's IEP included such care in its program for the child. The formulation of a child's IEP is within the province of local school authorities and the child's parents or guardian, and it is subject to challenge by the child's parents or guardian in a due process hearing. The Court cannot predict that a focused administrative adjudication of Anthony Mitchell's placement will result in a finding that residential placement is not necessary in his case. *See Riley v. Ambach*, 668 F.2d 635, 641–42 (2d Cir. 1981).

Moreover, it is evident that the Walters memorandum was not intended to have any binding effect upon local education agencies, even as a policy statement. In a paragraph entitled "Summary" located at the end of the memorandum, it is stated that the recommendations made therein are merely "guidelines [that] may assist you until such time as clear cut national policies

are established by the Office of Special Education, U. S. Department of Education." At most, the memorandum reflects an abstract and non-binding interpretation by the state department of education that residential placement is not required under the EAHCA. This falls far short of a "predetermination" of the specific issues involved in Anthony Mitchell's case, and the Court is not persuaded that exhaustion of administrative remedies would be futile for plaintiffs.

For all of the foregoing reasons, therefore, plaintiff's claim under the EAHCA must be dismissed for failure to exhaust administrative remedies. For similar reasons set forth below, this Court concludes that plaintiff's claims made under the Rehabilitation Act of 1973 and 42 U.S.C. § 1983 must also be dismissed.

## II. The Rehabilitation Act Claim

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, provides in pertinent part:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

The basis of plaintiffs' claim under this section is essentially the same as that of their claim under the EAHCA. It is founded upon the allegation that defendants have discriminated against Anthony Mitchell by failing to provide him with an appropriate free public education while providing appropriate educational placements for other individuals.

Unlike the EAHCA, the Rehabilitation Act does not expressly create a private right of action in favor of handicapped individuals for violations of its terms.[5]  How-

---

**5.** Section 794a of the Rehabilitation Act provides that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 shall be available to any person aggrieved by any act or failure to act by any

recipient of Federal assistance or Federal provider of such assistance under section 794 of this title." This provision allows a plaintiff claiming a violation of section 794 to file a complaint with the Department of Health and

ever, the courts have consistently interpreted the Act to imply a private cause of action. *See, e.g., Camenisch v. University of Texas*, 616 F.2d 127 (5th Cir. 1980), *vacated on other grounds*, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *NAACP v. The Medical Center, Inc.*, 599 F.2d 1247 (3d Cir. 1979); *Davis v. Southeastern Community College*, 574 F.2d 1158 (4th Cir. 1978), *reversed on other grounds*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); *United Handicapped Federation v. Andre*, 558 F.2d 413 (8th Cir. 1977); *Kampmeier v. Nyquist*, 553 F.2d 296 (2d Cir. 1977); *Lloyd v. Regional Transportation Authority*, 548 F.2d 1277 (7th Cir. 1977).

It is clear that there is a substantial overlap between the substantive rights created by the EAHCA and the Rehabilitation Act insofar as the latter applies to educational programs receiving federal financial assistance. Regulations promulgated by the Department of Health and Human Services pursuant to the Rehabilitation Act direct recipients of federal funds who operate educational institutions to establish standards and procedures for the identification, evaluation, and placement of persons who, because of handicap, need special education and related services, and to establish procedural safeguards with respect to such identification, evaluation, and placement. 45 C.F.R. § 84.35 and .36 (1981). The applicability of the administrative remedies under the EAHCA to complaints brought under the Rehabilitation Act is expressly recognized by § 84.36, which provides that "[c]ompliance with the procedural safeguards of section 615 of the Education of the Handicapped Act is one means of meeting this requirement [for procedural safeguards]."

Although the Rehabilitation Act does not explicitly require exhaustion of state administrative remedies, the prevailing authority holds that a plaintiff bringing claims under both the EAHCA and the Rehabilitation Act must exhaust remedies on both claims. As the court in *Smith v. Am-*

bach, 3 EHLR 542:490 (W.D.N.Y. August 21, 1981) stated:

> Where a plaintiff joins claims under the EHA and the Rehabilitation Act, exhaustion of administrative remedies should be required with respect to both claims. Dispensing with the requirement of exhaustion of the EHA remedies would enable plaintiffs to circumvent the EHA's procedures merely by adding a cause of action under the Rehabilitation Act. The administrative procedures established by the EHA would thereby be rendered virtually meaningless.

*Id.* at 492. *Accord, Scruggs v. Campbell*, 630 F.2d 237 (4th Cir. 1980); *Akers v. Bolton*, 531 F.Supp. 300 (D.Kan.1981); *H. R. v. Hornbeck*, 3 EHLR 553:139 (D.Md. Sept. 24, 1981); *Harris v. Campbell*, 472 F.Supp. 51 (E.D.Va.1979). *See also Boxall v. Sequoia Union High School*, 464 F.Supp. 1104 (N.D. Cal.1979); *Ross v. Cleveland Sch. Bd., et al.*, C79–1700 (N.D.Ohio Jan. 22, 1980) (slip opinion attached to State Defendants' Motion to Dismiss First Amended Complaint, at A–23). Because plaintiffs here have failed to exhaust their administrative remedies under the EAHCA, their claim under the Rehabilitation Act must also be dismissed.

### III. The Section 1983 Claim

In their first amended complaint, plaintiffs also assert the claim that "[b]y refusing to provide Tony Mitchell with an appropriate education because of his handicapping [sic] condition, defendants are depriving plaintiffs of due process and the equal protection of the law, in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution." First Amended Complaint ¶ 41.

At the outset, it should be noted that § 1983 creates no substantive rights of its own, but rather is a remedial statute imposing liability upon those who, under color of state law, deprive another of a right, privi-

---

Human Services, which may then conduct an investigation and hearing, and ultimately termi-

nate funds to the offending party. 45 C.F.R. § 84.61, 80.6–80.10, and 81.1 et seq.

lege, or immunity otherwise secured by the Constitution and laws of the United States.[6]

The Court of Appeals for the Seventh Circuit has recently held that § 1983 affords no right of action to redress a deprivation of rights secured by the EAHCA, because the comprehensive procedural safeguards established in the EAHCA provide a remedy that was intended by Congress to be exclusive. *Anderson v. Thompson*, 658 F.2d 1205 (7th Cir. 1981), *citing Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981); *Great American Fed. S. & L. Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), and *Brown v. GSA*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). *Cf. Middlesex Cty. Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

Plaintiffs, however, argue that their claim under § 1983 is based on alleged violations of their constitutional rights of due process and equal protection, as distinct from any statutory rights created by the EAHCA. Plaintiffs' Memorandum in Opposition to State Defendants' Motion to Dismiss First Amended Complaint, 7–8. Whether a plaintiff can utilize § 1983 as a remedy for conduct that violates both the EAHCA and the Fourteenth Amendment is a question expressly left undecided by the court in *Anderson*. 658 F.2d 1205 n. 19.

For the purpose of deciding defendants' motion to dismiss, the court need not attempt to lay down a rule with respect to whether the EAHCA preempts § 1983 as a means of remedying any and all failures of state educational authorities to provide appropriate educational placements for the handicapped. To do so under the facts of this case would be improvident, particularly in view of the continuing judicial disagreement over the scope of remedies available under the EAHCA. Nevertheless, the

Court has no difficulty in concluding that plaintiffs here have failed to state a cognizable constitutional claim under § 1983.

With respect to their due process claim, plaintiffs merely reassert their allegation that defendants have arbitrarily failed to provide Anthony Mitchell with the free appropriate public education to which he is entitled. Yet, plaintiffs have made no attempt to invoke the comprehensive due process safeguards that the EAHCA and state regulations thereunder provide, which include the right to a due process hearing before an impartial hearing officer, the right to present and cross-examine witnesses, and the right to administrative appeal. Under these circumstances plaintiffs' claim of a denial of due process is plainly without substance. *See Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (holding no due process claim stated for loss of prison inmate's property where adequate state remedy available); *Akins v. Bolton*, 531 F.Supp. 300, 315 (D.Kan.1981).

In explaining the basis of their equal protection claim, plaintiffs assert that "defendants are denying plaintiff Tony a free appropriate education while providing such an education to nonhandicapped and single-handicapped children." Plaintiffs' Memorandum in Opposition to State Defendants' Motion to Dismiss First Amended Complaint, 8. As the plaintiffs themselves point out, however, the EAHCA and the Rehabilitation Act of 1973 were specifically designed by Congress to assure handicapped individuals the equal protection of the law, a fact that is well illustrated by the legislative history of the EAHCA.[7] In a case very similar to the case at bar, the court in *Harris v. Campbell*, 472 F.Supp. 51 (E.D.Va. 1979) held

> Plaintiff's claims under ... the Equal Protection Clause, and 42 U.S.C. § 1983 are also premature. The basis of all

---

**6.** "[O]ne cannot go into court and claim a 'violation of § 1983' ...." *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979) (Stevens, J.)

**7.** *See, e.g.*, S.Rep.No.94–168, 94 Cong., 1st Sess. 9, reprinted in 1975–2 U.S.Code Cong.

and Admin.News 1425, 1433: "It is this Committee's belief that the Congress must take a more active role under its responsibilities for equal protection of the laws to guarantee that handicapped children are provided equal educational opportunity."

these claims is substantially the same as that of plaintiff's claim under the Education for All Handicapped Children Act of 1975; all of these claims are founded upon plaintiff's assertion that defendants have discriminated against him by failing to place him in an appropriate educational program at public expense, while providing appropriate public educational programs at public expense to average children.

There is no basis for a claim before this court . . . that plaintiff was denied equal protection of the laws, until plaintiff has exhausted his procedural hearing and review remedies under the Education for All Handicapped Children Act of 1975. Congress enacted the Act ". . . in order to assure [handicapped children] equal protection of the law." Public Law 91–230, § 601, amended by Public Law 94–142, § 3(a). Plaintiff does not attack the Virginia procedures instituted to carry out the State's responsibilities under the Act. The Act under Virginia procedures therefore in the instant case provides plaintiff with equal protection to protect him against discrimination due to his handicap. The determination of whether the defendants violated the Act and what steps they must take to correct any such violations must first be brought before the local and state agencies, as required by law.

*Id.* at 55. *Accord, Sessions v. Livingston Parish Sch. Brd.*, 501 F.Supp. 251, 254–55 (M.D.La.1980); *H. R. v. Hornbeck*, 3 EHLR 553:139, 143 (D.Md. September 24, 1981); *Smith v. Ambach*, 3 EHLR 552:490, 492 (W.D.N.Y. August 21, 1981).

Although § 1983 is generally held not to entail any requirement that a plaintiff exhaust state administrative remedies,[8] the Court believes that the decision of the court in *Harris* and the other cases cited is both correct and pertinent to the instant case. Congress enacted the detailed scheme of administrative and judicial remedies as part of the EAHCA with the express purpose of ensuring that handicapped children are provided equal educational opportunities. It is inconceivable that Congress could have intended at the same time to permit the circumvention of the EAHCA's carefully delineated exhaustion requirement by artful pleading. For this reason, the Court holds that plaintiff's equal protection claim must be dismissed due to plaintiffs' failure to exhaust their remedies under the EAHCA.[9]

WHEREUPON, upon consideration and being fully advised, the Court determines that defendants' motion to dismiss is meritorious and it is hereby GRANTED. This action is DISMISSED without prejudice to plaintiffs' right to renew their action after exhausting their state administrative remedies.

IT IS SO ORDERED.

---

8. *See Jones v. Metzger*, 456 F.2d 854 (6th Cir. 1972). *But see Patsy v. Florida International University*, 634 F.2d 900 (5th Cir. 1981) (en banc), *cert. granted*, —— U.S. ——, 102 S.Ct. 88, 70 L.Ed.2d 81 (1981).

9. In view of this disposition, the Court does not address the merits of defendants' alternative grounds for dismissal.