Ray **CROCKER; Susan Crocker, as legal guardians and next friends of Michael Crocker, Plaintiffs–Appellees,**

v.

**TENNESSEE SECONDARY SCHOOL ATHLETIC ASSOCIATION, Defendant–Appellant, (88–6063)**

**Charles Smith, Commissioner of the Tennessee Department of Education; Metro Nashville–Davidson County, Tennessee, Defendants–Appellants. (88–6185)**

Nos. 88–6063, 88–6185.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 13, 1988.

Decided May 1, 1989.

David T. Hooper, W. Gary Blackburn (argued), Alagia, Day, Marshall, Mintmire & Chauvin, Nashville, Tenn., for Ray Crocker, et al.

Charles Hampton White (argued), Richard L. Colbert, Cornelius & Collins, W. Gregory Miller, Nashville, Tenn., for Tennessee Secondary School.

W.J. Michael Cody, Atty. Gen., Jane W. Young, Myra L. Sanderson (argued), Asst. Attys. Gen., Charles W. Burson, Atty. Gen., Nashville, for Charles Smith, Commissioner of the Tennessee Dept. of Educ. and Metro Nashville–Davidson County, Tenn.

William M. Safley (argued), Susan Short Jones, Director of Law, Nashville, Tenn., for Metropolitan Government of Nashville & Davidson County.

Before MERRITT, MARTIN and JONES, Circuit Judges.

MERRITT, Circuit Judge.

These consolidated cases arise under the Education of the Handicapped Act, 20 U.S.C. § 1415(e). Susan and Ray Crocker, as legal guardians of their son Michael Crocker, sued in District Court seeking to enjoin the Tennessee Secondary School Athletic Association, the Tennessee Department of Education and Metro Nashville–Davidson County, from applying to Michael Crocker the TSSAA transfer rule. That rule bars a secondary school student in a TSSAA member school who has transferred from one school to another from playing in any interscholastic sport for one year. The Crockers obtained a preliminary injunction from District Judge Nixon restraining the TSSAA and the governmental defendants from imposing the one-year rule in this case. Judge Merritt, sitting as a single judge under Rule 27(c), Fed.R.App.P., declined to stay the injunction pending appeal, advised the parties to brief the exhaustion issue, and ordered the appeal expedited. We now dissolve the injunction and dismiss this action, because the plaintiffs have failed to exhaust their administrative remedies.

Michael Crocker, now a student in the tenth grade, transferred from Ezell–Harding Christian School to McGavock Senior High School (a public school in Nashville) on March 2, 1988. Application of the transfer rule to him would result in his being barred from participation in interscholastic athletic contests until March 3, 1989. He has been found since his transfer to McGavock to have a learning disability, and his parents claim that the reason for the transfer was the same disability. The Crockers claim that application of the transfer rule to their son would violate his right, as a handicapped student within the meaning of the EHA, to obtain a free, appropriate public education.

The EHA requires that states which rely on certain federal funds to support public education shall not deny a free appropriate public education to handicapped students. 20 U.S.C. § 1412. To effectuate the substantive rights it creates, the Act requires that states shall establish procedures "to assure that handicapped children and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate public education[.]" 20 U.S.C. § 1415(a). Indeed, the minimum requisites for due process in this context are specified with painstaking care both in the Act and in regulations promulgated

under it. States must provide to any parent or guardian who complains that his or her child has been denied rights secured by the Act with an opportunity for an impartial due process hearing. The Act specifies that the due process hearing may be conducted either by the state educational agency, the local educational agency, or an intermediate educational unit, but may not be conducted by any state agency directly involved in the education or care of the child. 20 U.S.C. § 1415(b)(2). If a local or intermediate body provides the initial due process hearing the state must also provide a direct appeal to the state educational agency. 20 U.S.C. § 1415(c). Finally, the Act provides that any party aggrieved by the decision reached in the administrative process that the Act mandates may file suit in state court or in federal district court. 20 U.S.C. § 1415(e)(2).

Every court that has considered the question has read this statutory scheme as a requirement for the exhaustion of administrative remedies. In case after case courts have read the statutory scheme to require parents and guardians to *use* the state process which the act specifies shall be provided to them. *Ass'n for Retarded Citizens of Alabama v. Teague, Inc.*, 830 F.2d 158, 160 (11th Cir.1987); *Doe ex rel. Gonzales v. Maher*, 793 F.2d 1470, 1490 (9th Cir.1986), *modified on other grounds sub nom. Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *Timms v. Metro. School Dist. of Wabash County, Ind.*, 722 F.2d 1310, 1316 (7th Cir.1983); *Monahan v. State of Neb.*, 687 F.2d 1164, 1168 (8th Cir.1982), *cert. denied sub nom. Rose v. State of Neb.* 460 U.S. 1012, 103 S.Ct. 1252, 75 L.Ed.2d 481 (1983); *McGovern v. Sullins*, 676 F.2d 98, 99 (4th Cir.1982); *Riley v. Ambach*, 668 F.2d 635, 640 (2d Cir.1981); *Ezratty v. Com. of Puerto Rico*, 648 F.2d 770, 775 (1st Cir. 1981); *Secor v. Richmond School Joint Dist. No. 2 Lisbon–Pewaukee*, 689 F.Supp. 869, 873 (E.D.Wis.1988); *Mitchell v. Walter*, 538 F.Supp. 1111, 1113 (S.D.Oh.1982); *Parks v. Pavkovic*, 536 F.Supp. 296, 302 (N.D.Ill.1982). *See also Eggers v. Bullitt County School Dist.*, 854 F.2d 892, 894 (6th Cir.1988).

Indeed, we cannot imagine any other reading of the statute. Only parties "aggrieved" by the results of the administrative process are granted a right of action in state or federal court. 20 U.S.C. § 1415(e)(2). To allow parents to come directly to federal courts would render the entire scheme of § 1415 nugatory. *Smith v. Robinson*, 468 U.S. 992, 1011, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984). In particular, it would frustrate the Act's specific direction that in "any action" brought in state or federal court under this section, "the court shall receive the records of the administrative proceedings[.]" 20 U.S.C. § 1415(e)(2).

The policies underlying this exhaustion requirement are both sound and important. States are given the power to place themselves in compliance with the law, and the incentive to develop a regular system for fairly resolving conflicts under the Act. Federal courts—generalists with no expertise in the educational needs of handicapped students—are given the benefit of expert factfinding by a state agency devoted to this very purpose. Such a mechanism is necessary to give effect to a fundamental policy underlying the EHA: "that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education." *Smith v. Robinson*, 468 U.S. at 1012, 104 S.Ct. at 3468. Were federal courts to set themselves up as the initial arbiters of handicapped children's educational needs before the administrative process is used, they would endanger not only the procedural but also the substantive purposes of the Act. And both states and the federal government have a recognized interest in providing enforcement of the Act that is not only just but efficient. *Riley v. Ambach*, 668 F.2d at 640; *Mitchell v. Walter*, 538 F.Supp. at 1113. *See also McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969) (reasons for doctrine of exhaustion of administrative remedies include need to allow administrative agency to apply its expertise

and to develop the facts, efficiency, and protection of the authority of the administrative process).

In the present case the Commissioner of the Tennessee Department of Education raised the defense of the Crockers' failure to exhaust their administrative remedies in his answer, and he has raised the issue again on appeal. We need not, therefore, reach the question whether the exhaustion requirement is sufficiently jurisdictional that a court must, and may, raise it *sua sponte,* although we note that one court has so held. *Parks v. Pavkovic,* 536 F.Supp. at 302.

We agree with the Commissioner that the procedures which Tennessee provides under the EHA are adequate to provide them with any relief to which they are entitled under the Act, and that the plaintiffs were bound to avail themselves of those procedures. Tennessee provides a fully articulated process by which parents who are dissatisfied with the educational program provided for their handicapped child can obtain the due process hearing required under the Act. The relevant state statute and regulations specify that a parent can request a hearing by making a written complaint to the superintendent of the local school system, who must then contact the division of the state Department of Education charged with responsibility for overseeing implementation of the EHA. A hearing must then occur within 30 days, and a final decision must be reached within 45 days. The regulations specify the qualifications of the hearing officer and require that no appointment be given to any employee of a local school system or to anyone involved in the formulation of state policies for the education of handicapped children. Tenn.Code Ann. § 49–10–601; Tenn.Comp.R. & Reg. ch. 0520–1–3–.09(5)(f).

The Crockers have not pointed out any deficiency in the administrative process devised by the state of Tennessee. Rather, they claim that the administrative process is unavailable to them because the state has delegated to the TSSAA its decision-making authority on the question of access to varsity sports by a handicapped student. They produce no evidence of such a delegation. To the contrary, the record before us indicates that the Crockers were fully informed of their due process rights when, in May of 1988, the local school system first promulgated an Individual Educational Program, or IEP, for their son. They were given an opportunity at that time to disagree with the IEP, and in writing they forwent that opportunity. IEP at 7, Joint Appendix at 335. Michael Crocker's father testified that he knew his due process rights and elected not to exercise them. Deposition of Ray Crocker at 76–77, Joint Appendix at 425–26. Since that time the Crockers have made no complaint that would trigger the impartial hearing to which they are entitled. Instead, they have chosen to apply to the TSSAA for a hardship waiver of any application of the transfer rule to their son and to await the outcome of that application. When the TSSAA determined on August 22, 1988 that Michael Crocker is not entitled to a hardship waiver, the Crockers failed once again to avail themselves of their right to an impartial hearing in the state administrative procedure. Instead, they filed suit in district court. Our careful review of the record in this matter indicates that the Crockers knew they had the right to obtain a due process hearing by an impartial hearing officer, and that they chose not to exercise that right.

We must conclude, finally, that this litigation is not saved by any of the narrow exceptions to the exhaustion requirement. Exhaustion will not be required where the use of administrative procedures would be futile or inadequate to protect the claimant's rights under the EHA. *Honig v. Doe,* 484 U.S. at ——, 108 S.Ct. at 606; *Smith v. Robinson,* 468 U.S. at 1014 n. 17, 1019 n. 22, 104 S.Ct. at 3472 n. 22; *Ass'n for Retarded Citizens of Alabama v. Teague,* 830 F.2d at 160; *Riley v. Ambach,* 668 F.2d at 640–41; *Mitchell v. Walter,* 538 F.Supp. at 1115. In addition, an exception to the exhaustion requirement has been found where the guardians of a child were not given full notice, as required by the EHA, of their procedural rights. *Doe ex rel.*

*Gonzales v. Maher,* 793 F.2d at 1490–91; 20 U.S.C. § 1415(b)(1)(D). The burden of demonstrating that administrative procedures would be futile falls on the party seeking to avoid them. *Honig v. Doe,* 484 U.S. at ——, 108 S.Ct. at 606; *Riley v. Ambach,* 668 F.2d at 641.

In the present case, the plaintiffs have not successfully met that burden. They assert that a due process hearing on the IEP issued in May 1988 would have been irrelevant because in that academic year their son did not seek to participate in extramural athletics, and that an appeal from the 1988–89 IEP would not have been ripe because the document had not been prepared when the football season began. Any claim that they could not foresee, during the spring of 1988, that they would assert their son's need to play in varsity sports in the fall of the same year, is belied by the fact that they sought the hardship waiver from the TSSAA throughout the spring and summer.

Though the need for swift action which administrative procedures cannot provide may justify an exception to the exhaustion requirement, *Parks v. Pavkovic,* 536 F.Supp. at 302, no exception will be made where plaintiffs assert an emergency that is in fact "a problem of their own making." *Phipps v. New Hanover County Bd. of Educ.,* 551 F.Supp. 732, 737 (E.D.N.C.1982). Here, a complaint about the IEP filed as late as mid-July would have produced an administrative ruling before the beginning of the academic year and of the football season. The Crockers could then have appealed an adverse decision to the state agency in advance of September 1988. We are unable, therefore, to accept the Crockers' argument that the administrative appeal would have been futile in this case.

We must dissolve Judge Nixon's injunction and dismiss this litigation, without reaching the Crockers' claims on the merits, because the Crockers have failed to avail themselves of mandatory, and effective, state procedures for resolving their dispute about their handicapped child's educational program. Accordingly, it is so ordered.

NATHANIEL R. JONES, Circuit Judge, concurring.

Although I concur in the majority's decision to dismiss this action, I am unable to join in the conclusions reached by the majority. My primary disagreement with the majority's reasoning is the assumption that the Crockers are "dissatisfied with the *educational program* provided for their handicapped child." *Ante* at 936 (emphasis added). From that assumption, the majority concludes that the Crockers' claims should be dismissed "because [they] have failed to avail themselves of mandatory, and effective, state procedures for resolving their dispute about their handicapped child's educational program." *Ante* at 937. While I agree that parents must challenge their child's individualized educational program (IEP) in order to state a claim under the Education of the Handicapped Act, 20 U.S. C. § 1415(e) (1982) (EHA), the thrust of their challenge here is not their son's IEP. The Crockers are in fact challenging whether the State of Tennessee can delegate power and control over high school athletics to a "judgment proof" volunteer organization such as the TSSAA. That being so, it would be futile to require the Crockers to exhaust their administrative remedies under the EHA.

The Crockers' allegations are similar to those made in *Gilmore v. City of Montgomery,* 417 U.S. 556, 94 S.Ct. 2416, 41 L.Ed.2d 304 (1974). In that case, the plaintiffs asserted that the state attempted to "delegate" the control of public recreational facilities to a racially segregated private entity.

In examining "whether the city's involvement in the alleged discriminatory activity of segregated private schools and other private groups, through its providing recreational facilities, constitutes 'state action' subject to constitutional limitation," the *Gilmore* Court recognized that the "Equal Protection Clause of the Fourteenth Amendment does not prohibit the '[i]ndividual invasion of individual rights.'" *Id.* at 564–65, 94 S.Ct. at 2422, quoting *Civil Rights Cases,* 109 U.S. 3, 11, 3 S.Ct. 18, 21,

27 L.Ed. 835 (1883). The Court stated that the equal protection clause "does proscribe, however state action 'of every kind' that operates to deny any citizen the equal protection of the laws." *Id.*

Based upon the reasoning in *Gilmore,* the State of Tennessee cannot fund high school athletic programs, yet delegate decisions concerning athletic eligibility to a judgment-proof non-State entity so as to escape their duty to protect the rights of handicapped athletes. Thus, if the TSSAA currently engages in practices which discriminate against handicapped high school athletes, it would seem that a complaining party could state a valid claim against the State and the TSSAA (as the State's agent) under the EHA or under one of the other federal or state anti-discrimination statutes. However, because the Crockers have failed to state this or any other valid claim under the EHA, I concur in the majority's decision to dismiss the action.