Brian **KUSZEWSKI**, a minor, by his parents, Richard **KUSZEWSKI** and Cindy Kuszewski, Plaintiff,

v.

**CHIPPEWA VALLEY SCHOOLS,** Defendant.

No. 96–74316.

United States District Court, E.D. Michigan, Southern Division.

June 3, 1999.

John G. Makris, Troy, MI, for plaintiff.

Robert A. Lusk, Keller, Thoma, Schwarze, Schwarze, DuBay & Katz, Detroit, MI, for defendant.

## OPINION AND ORDER

FEIKENS, District Judge.

## I. INTRODUCTION

Brian Kuszewski is a student in the Chippewa Valley School District (the District). He is a "child with a disability" within the meaning of the Individuals with Disabilities in Education Act (IDEA), 20 U.S.C. § 1400 et seq. The provisions of the IDEA seek to ensure that children such as Brian receive free appropriate public education (FAPE), 20 U.S.C. § 1412(1). Toward that end, the IDEA requires that Chippewa Valley have in place an Individualized Educational Plan (IEP), specially designed to meet Brian's unique educational needs, prior to each school year, 20 U.S.C. § 1411(d)(2)(A).[1] The IDEA also requires that Chippewa Valley review the IEP no less than annually. 20 U.S.C. § 1414(d)(4)(A).

In May, 1996, the District held its annual IEP Team meeting regarding Brian's IEP. According to plaintiff's submissions, the IEP was substantially completed except for a few minor points. Pltf. Reply, filed January 23, 1998, ¶ 3. The parties arranged a meeting for September 12, 1996, to resolve the remaining points.

Rather than await this meeting, on August 19, 1996, plaintiff chose to file a complaint in Macomb County Circuit Court. The complaint alleged that the District intentionally "began to deprive Plaintiff the full utilization of the benefits of the school district," citing various incidents, in violation of the Michigan Handicapper Civil Rights Act (MHCRA), M.C.L. § 37.1101 et seq. The District removed the case, arguing that jurisdiction was proper pursuant to 28 U.S.C. § 1331, because plaintiff's claim, though ostensibly premised upon the MHCRA, was in fact governed by the IDEA. In November, 1997, plaintiff filed an amended complaint in federal court, expressly articulating the IDEA claim as a "separate" count.

In December, 1997, the District filed a motion for summary judgment, arguing that plaintiff failed to exhaust the administrative remedies required by the IDEA.[2]

---

1. Many of the provisions of the IDEA also are found in federal regulations, see 34 C.F.R. § 300.300 et seq., in Michigan legislation implementing the provisions of the federal statute, see M.C.L § 380.1701 et seq., and in Michigan regulations, see Mich.Admin.Code R 340.1701 et seq. IDEA section numbers refer to the IDEA as amended effective July 4, 1997.

2. Specifically, under the IDEA, if the parents (or the district) disagree with an IEP as developed by the school district, they are entitled to a due process hearing before an impartial hearing officer. 20 U.S.C. § 1415(f)(1). In states such as Michigan, where that impartial hearing occurs at the local level, the parents (or the district) are also entitled to file an "appeal" to the state department of education. 20 U.S.C. § 1415(g).

Plaintiff conceded that she had not attempted to exhaust the administrative remedies required by the IDEA before filing the complaint, Pltf. Reply Brief, filed January 23, 1998, p. 6, but argued (1) that her claim under the MHCRA did not require the exhaustion of administrative remedies, and (2) that such administrative remedies would be futile. In support of her futility argument, plaintiff referenced approximately six instances between August 23, 1996 and January 21, 1998, *after she had filed the present lawsuit*, in which she either filed a complaint with the District, requested a new IEP, or requested a due process hearing (February 12, 1997 and June 10, 1997). In each of those instances, plaintiff contended, the District refused to take action. The District, however, had taken the position that a hearing or an IEP Team meeting was inappropriate during the pendency of this action.

In an effort to resolve the issue, on March 18, 1998, I entered an order holding this case in abeyance "pending Plaintiff's initiation and exhaustion of administrative remedies as required by law." Rather than begin immediately with the necessary administrative remedies, the parties followed a slightly different, but understandable, course of action. Brian underwent further medical evaluation, and a new IEP Team meeting was held. The process took entirely too long,[3] but by November, 1998, the District had developed a new IEP.

Brian's parents continued to disagree with the District's assessments. Nonetheless, with the understandable desire to secure for Brian the modest improvements of the new IEP, they agreed to have the new IEP implemented. While so agree-

ing, they attached to the IEP a lengthy "dissent," outlining the alleged deficiencies of the IEP. Despite the wording of my order holding this case in abeyance, they *did not* request that administrative remedies be initiated as to the alleged deficiencies of the November 1998 IEP.

On March 31, 1999, the District again filed its motion for summary judgment.

## II. DISCUSSION

■ In the ordinary case, the IDEA requires exhaustion of administrative remedies before a civil action may be commenced. 20 U.S.C. § 1415(i)(2)(A); *Board of Education v. Rowley*, 458 U.S. 176, 183, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); *Crocker v. Tennessee Secondary School Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir. 1989). As the United States Court of Appeals for the Sixth Circuit explained in *Crocker*:

The policies underlying this exhaustion requirement are both sound and important. States are given the power to place themselves in compliance with the law, and the incentive to develop a regular system for fairly resolving conflicts under the Act. Federal courts—generalists with no expertise in the educational needs of handicapped students—are given the benefit of expert factfinding by a state agency devoted to this very purpose. Such a mechanism is necessary to give effect to a fundamental policy underlying the EHA: "that the needs of handicapped children are best accommodated by having the parents and the local education agency

As the IDEA makes quite clear, these administrative remedies must be exhausted before court proceedings may be initiated. 20 U.S.C. § 1415(i)(2)(A); *see Board of Education v. Rowley*, 458 U.S. 176, 183, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).

3. As noted above, both federal and state law require the school to have in place for every disabled student an IEP *at the start* of the school year, 20 U.S.C. § 1414(d)(2)(A); *see*

*also* 34 C.F.R. § 300.342(a), updated annually. 20 U.S.C. § 1414(d)(4)(A); *see also* 34 C.F.R. § 300.343(d); Mich.Admin.Code R 340.1721d(2)(c) (1980). Thus, even without the pending lawsuit, the school should have finished the IEP Team meeting and had an IEP in place no later than the start of the school year. Inexplicably, the IEP Team meeting was not begun until September 10, 1998, and took about two months to complete.

work together to formulate an individualized plan for each handicapped child's education." *Smith v. Robinson,* 468 U.S. 992, 1002, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) [ (superseded by statute on other grounds) ]. Were federal courts to set themselves up as the initial arbiters of handicapped children's educational needs before the administrative process is used, they would endanger not only the procedural but also the substantive purposes of the Act.

*Crocker,* 873 F.2d at 935.

Plaintiff concedes that administrative remedies have not been exhausted in this case. Plaintiff contends, however, that adherence to the administrative process would be futile. In an effort to meet the burden of demonstrating futility, *see Crocker,* 873 F.2d at 937, plaintiff cites what she perceives to be (1) a pattern of dilatory tactics on the part of the District in handling Brian's case, (2) a growing atmosphere of animosity between the parties, and (3) alleged instances of purposeful discrimination against Brian designed to make his educational placements more difficult.

Point (3), though quite serious in nature, is not itself a reason to suggest that the administrative process prescribed by the IDEA would be futile. The IDEA itself requires that the initial due process hearing in this case must be impartial, 20 U.S.C. § 1415(f)(1), that is, it must be conducted by an impartial hearing officer, 34 C.F.R. § 300.507. Subsequent appeal to the state department of education is likewise conducted before a neutral third party. For these same reasons, point (2), though unfortunate, does not render adherence to the administrative process futile.

Of more import is plaintiff's concern as to perceived past dilatory tactics on the part of the District. Briefly, plaintiff alleges the following:

(1) Notwithstanding repeated complaints, requests for new IEP Team meetings, and even two requests for due process hearings (albeit after the case had been filed in August 1996), the District has failed to take prompt action.

(2) From August 1996 through November 1998, under the purported requirements of the "stay-put" provision of the IDEA, 20 U.S.C. § 1415(j), the District continued to utilize Brian's 1995–1996 IEP, and failed to annually update the IEP through IEP Team meetings, as required in § 1414(d)(4).

(3) When this case was held in abeyance in March 1998, it took approximately nine months to develop a new IEP.

While these complaints do not themselves render the administrative process futile once it is undertaken, they do suggest that plaintiff may have legitimate concerns as to the dispatch with which administrative remedies may be completed.

For instance, it is most troubling that the parties proceeded in such an untimely manner after the March 1998 order holding this case in abeyance for the express purpose of exhausting administrative remedies. There is some indication in the parties' submissions that the efforts involved in developing Brian's new IEP were almost immediately reduced to arguments between the parties as to the identity of a doctor to whom Brian would be sent and the content of a release Brian's parents were to sign. The IEP Team meeting itself was not begun until September 1998, and was not completed until November. (As noted in footnote 3, without the pending litigation, Brian should have had a current IEP in place no later than the start of the 1998–1999 school year. 20 U.S.C. § 1414(d)(2)(A).) Finally, despite the specific wording of my March 1998 order holding this case in abeyance, neither party initiated administrative proceedings after the new IEP was devel-

oped.[4]

I had intended that my March 1998 order holding the case in abeyance would make it sufficiently clear to both parties that they were to proceed with administrative proceedings in conformity with the requirements of the IDEA. It is apparent from the facts outlined just above that this did not occur. I find it necessary, therefore, to again direct the parties to undertake administrative proceedings. In light of the previous actions of the parties, however, I am setting forth the following schedule for conducting administrative proceedings, in conformity with federal and state law and regulations:

1. The District shall schedule the due process hearing for a date no earlier than 15 days and no later than 30 days after the receipt of this opinion and order. *See* Mich.Admin.Code R. 340.1725b(1). Correspondence should be sent to the court indicating the date of the hearing.

2. After the hearing officer has issued its final decision in conformity with Mich.Admin.Code R. 340.1725b(2) and (3), a copy of that final decision shall be sent to the court.

3. If it is then necessary to conduct an administrative appeal from the final decision of the hearing officer, that appeal shall be requested and held in conformity with Mich.Admin.Code R 340.1725. Upon receipt of a decision by the state agency, a copy should be sent to the court.

4. A status conference will be scheduled for the first or second week of September, or at the conclusion of the administrative process, whichever is earlier.

Except as expressly set forth above, nothing in this opinion and order should be understood to alter the parties rights or obligations under either the IDEA or Michigan law and regulations. If, however, the administrative process is adjourned or delayed pursuant to Mich.Admin.Code R 340.1724(4) for any reason, correspondence should be sent to the court informing the court of the delay and the reasons.

### III. CONCLUSION

This case is again held in abeyance pending exhaustion of administrative remedies as specifically set forth above.

**IT IS SO ORDERED.**

---

4. It is, of course, a parent's obligation, in the first instance, to request a due process hearing in order to contest the content of an IEP with which they disagree. *See* Mich.Admin.Code R 340.1725b(1)–(2) (giving both the parent and the district 7 days to request a hearing if necessary). Under Michigan regulations, however, it is the school district that arranges or conducts the due process hearing. Mich.Admin.Code R 340.1724(2). Admittedly, in the ordinary case where the parent disagrees with the IEP as proposed, this obligation does not arise until the parent requests the due process hearing. However, given the lengthy proceedings in this case, the wording of my abeyance order, and the "dissent" plaintiff attached to the November 1998 IEP, it would not have been beyond reason for the District to simply have proceeded to a due process hearing.