**METROPOLITAN BOARD OF PUBLIC EDUCATION, Metropolitan Government of Nashville and Davidson County, Plaintiff–Appellee,**

v.

**Joel GUEST, by and through his parents, Sara and Bob Guest; Sara Guest; Bob Guest, Defendants–Appellants.**

No. 98–5884.

United States Court of Appeals,
Sixth Circuit.

Argued June 11, 1999.

Decided Oct. 4, 1999.

458

Mary E. Johnston (argued and briefed), Metropolitan Legal Department, Nashville, TN, for Plaintiff–Appellee.

Gary D. Buchanan (argued and briefed), Tennessee Protection & Advocacy, Inc., Nashville, TN, for Defendants–Appellants.

Before: MERRITT and SILER, Circuit Judges; DLOTT,* District Judge.

---

* The Honorable Susan J. Dlott, United States District Judge for the Southern District of Ohio, sitting by designation.

1. The IDEA was amended in 1997. *See* Pub.L. 105–17, Title II, § 201(a)(2)(C), June

OPINION

DLOTT, District Judge.

Plaintiff–Appellee Metropolitan Board of Public Education ("Metro Board") filed suit against the Defendant–Appellant Joel Guest, by and through his parents, Sara and Bob Guest ("the Guests") to reverse the January 24, 1997 order of the Administrative Law Judge ("ALJ") in a due process hearing authorized by the Individuals with Disabilities Education Act ("IDEA" or "the Act"), 20 U.S.C. § 1400, et seq.[1] The Guests had initiated the due process hearing to oppose the Individualized Education Program ("IEP") proposed by the Metro Board for Joel for the 1996–1997 school year. The ALJ decreed that the disputed IEP was not supported by the facts, that Joel Guest was to remain in a regular classroom for the remainder of the 1996–1997 school year, and that the Guests were the prevailing party. On appeal to the District Court for the Middle District of Tennessee, the district court reversed the ALJ's order that Joel Guest be placed in the full inclusion program, ordered placement in a special education classroom for two-thirds of Joel's day for the 1998–1999 school year, and declared that neither party was the prevailing party for purposes of awarding attorney's fees. The Guests then appealed to this Court. For the reasons that follow, we **REVERSE AND REMAND** to the district court for proceedings consistent with this order.

I.

This case is procedurally complicated, although the underlying facts are relatively straightforward. Joel Guest is a minor student with autism. He was placed in a regular education kindergarten classroom at West Meade Elementary School for the 1995–1996 school year. Joel was the only

---

4, 1997. However, the administrative hearing and the relevant events occurred before the effective date of the 1997 amendments. The IDEA statutory sections cited, therefore, are those prior to the 1997 amendments.

student with a disability in the classroom. A full-time aid, a special education teacher, a speech-language therapist, and an occupational therapist supported Joel in the regular classroom pursuant to an IEP.[2] JA at 17, 172–73.

During the course of the 1995–1996 school year, school system staff determined that Joel required a more restrictive setting than a regular education classroom. The school system staff proposed at a multi-disciplinary team ("M-team") meeting held in April 1996 that Joel be placed in a segregated special education classroom for two-thirds of the day, and in the regular classroom for one-third of the day, during the 1996–1997 school year. The Guests objected to the proposed IEP; they preferred that Joel remain in the regular classroom at West Meade. JA at 18. The Guests then requested an administrative due process hearing, pursuant to 20 U.S.C. § 1415(b)(2).[3] Consequently, the 1995–1996 IEP continued to be implemented pursuant to the "stay-put" provision of the Act and Joel remained in the full inclusion, regular classroom program. *See* 20 U.S.C. § 1415(e)(2).[4]

An ALJ of the Tennessee Department of Education conducted a two day due process hearing in September 1996. The ALJ issued a remedial order in favor of the

Guests on November 26, 1996. JA at 26. The ALJ stated that the proposal to place Joel in a more restrictive setting may have been appropriate, but that "the facts do not support that decision." JA at 26. The ALJ found several procedural violations of the Act including that "insufficient data was kept, expert opinions ignored, ... and ... information [was withheld] from the parents." *Id.* The ALJ concluded that because of the procedural errors and because Joel was educated by individuals who were not properly trained, Joel did not receive a free appropriate public education ("FAPE").[5] JA at 25–26.

The ALJ decreed that the Guests were the prevailing party and ordered the following: (1) that Joel continue in the regular classroom for the remainder of the 1996–1997 school year; (2) that daily progress reports be written and made available to the Guests; (3) that the regular classroom teacher receive training and that an individual with specific training for autism act as a one-on-one aide until Joel received a formal forensic evaluation by a doctoral specialist with credentials in autism; and (4) that following the evaluation, the doctoral specialist attend an M-team meeting during which a full inclusion IEP be developed for the 1997–1998 school year.[6] JA at 26–27.

2. The Act requires that an IEP of "specially designed instruction to meet the unique needs of children with disabilities" be developed and written for a child with a disability by a representative of the local school agency, the teacher, the parents or guardian, and the child if appropriate. 20 U.S.C. § 1401(20). This group is referred to as the multi-disciplinary team ("M-team).

3. Under the Act, parents or guardians of a child have the procedural right to "present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or to the provision for a free public education to such child." 20 U.S.C. § 1415(b)(1)(E). Upon presenting their complaint, the parents or guardians have the procedural right to an "impartial due process hearing" conducted by the appropriate state or local educational agency. 20 U.S.C. § 1415(b)(2).

4. Section 1415(e)(2) allows a child to remain in the then current educational placement during the pendency of administrative proceedings and subsequent judicial appeals.

5. To qualify for federal assistance, states must have "in effect a policy that ensures all children with disabilities the right to a free appropriate public education." 20 U.S.C. § 1412(1).

6. The ALJ wrote that an IEP should be developed for the 1996–1997 school year, but this year must be wrong. The order was issued in January 1997, in the middle of the 1996–1997 school year, and the ALJ had already ordered that Joel remain in the regular classroom for the remainder of that year. JA at 27. Considering that the ALJ was ordering further evaluations by an autism expert and that the M-team develop a new IEP based on the evaluation, the ALJ must have intended that the IEP cover the 1997–1998 school year.

Metro Board filed an appeal to the federal district court on January 24, 1997, pursuant to 20 U.S.C. § 1415(e)(4). JA at 12. Metro Board requested in the Complaint filed with the district court that it be allowed to file additional evidence. JA at 13. On May 5, 1997 the Court issued an Order appointing Dr. William Brown and Dr. Travis Thompson to serve as evaluators/consultants. JA at 586. The experts evaluated Joel late in the 1996–1997 school year. The Guests filed a Counterclaim on July 23, 1997 alleging that Metro Board failed to implement the ALJ's order in violation of the Act and other disability statutes, and seeking damages for Metro Board's failure to provide Joel a FAPE and for the parents' pain and suffering. JA at 611.

On July 30, 1997, Joel's M-team, with the addition of Dr. Brown, Dr. Thompson, and Amy Koppekin, a special education graduate student who was hired to be an independent consultant, met to plan an IEP for the 1997–1998 school year. JA at 759. According to Mrs. Guest's testimony, the participants agreed to use a "transdisciplinary team" model and established draft goals and objectives.[7] JA at 772, 775. Mrs. Guest further testified that the team was scheduled to meet weekly and that the first team task was to conduct a new assessment of Joel. Koppekin was supposed to develop a written program based on the assessment that would form the basis for a new, permanent IEP. Mrs. Guest maintained that Koppekin never completed her task, and that consequently the work of the team was stalled. JA at 775–76, 787–88, 809–10. Mrs. Guest also asserted that Joel's special education teacher was changed three times in a several month period and that the first two special education teachers did not have experience with autistic children. JA at 801–02.

Pam Pallas, a school system employee and inclusion specialist, joined the transdisciplinary team in late 1997. She stated at a team meeting held on November 25, 1997 that the team had failed to meet its goals concerning Joel:

And the general consensus is-is that we have not met Joel's goals on a consistent basis. We are not—he has not—has not reached a point in acquiring goals at this time that we had planned for him to have met when his IEP was rewritten.

JA at 1014. The next month, in December 1997, school officials informed Mrs. Guest that she could no longer continue her regular practice of visiting school to observe Joel without first giving twenty-four hours notice. The school officials informed the Guests that unrestricted visits were against existing school policy and they were going to begin enforcing that policy. JA at 816–20. The Guests withdrew Joel from school following this incident.

The next month the Guests filed a Motion for Preliminary Injunction in their civil litigation pending in the district court. The Guests sought an order (1) allowing them to observe Joel at the school without giving notice and without restriction on time and duration of their visits, and (2) requiring the school system to place Joel at the New England Center for Children pending an administrative hearing on the same issue. JA at 621. The Guests concurrently filed a request for a new due process hearing before an ALJ. Metro filed a Motion to Dismiss the administrative proceeding because of the pending district court proceeding. The Guests then conceded the issue, and the due process hearing was dismissed without prejudice in March 1998.

The district court held a trial in April 1998 and issued a Memorandum and Order on May 28, 1998. JA at 29–52. In its Order, the district court discussed the tes-

---

**7.** Metro Board states in its Brief that the new IEP—which it does not describe as temporary—called for Joel to receive 2.75 hours daily from a special education teacher and the remainder of the day in a general classroom. Metro Board does not provide a citation to the record.

timony it had heard and the evidence it had received from the court appointed evaluators, school officials, and other experts. In its findings of fact, the district court found that Joel had made inadequate progress since the time of his administrative hearing held in September 1996. JA at 35. The district court also found that Joel received "appropriate supplemental special education and services from qualified and sincere individuals." JA at 36. The district court then discussed Joel's performance and occasional disruptive influence in the classroom. JA at 38–42. For example, the court noted that Joel did not know the alphabet or recognize colors by name, that he could not work independently, and that he sometimes ran out of the classroom or pulled his classmates' hair. JA at 38–42.

In its conclusions of law, the district court affirmed the ALJ's ruling to the extent that two procedural violations were established. First, Metro Board officials failed to consider the report of an expert, Dr. Brown, in devising the IEP proposed for the 1996–1997 school year. JA at 46. Second, Metro Board had insufficient documentation to support its decision to change Joel's placement for the 1996–1997 school year. JA at 46. The district court noted a third procedural violation—the failure of Metro Board to designate a specific school for Joel in the proposed IEP—but specifically stated that the violation did not rise to the level of substantive harm. The Court did not make a finding as to whether substantive harm resulted from the first two violations established. Finally, the district court found that no procedural violations had occurred since the administrative hearing. JA at 46–47.

The district court next addressed the issue of relief sought. The district court noted that neither party sought the court to affirm the relief ordered by the ALJ. Nevertheless, the court ruled that to the extent the ALJ had ordered Joel to be placed in a full inclusion program, the ALJ's Order was reversed. JA at 47.

The district court found that full inclusion had been tried and had failed. JA at 48–49. The district court also rejected the Guests' request of placement at a private residential facility. JA at 50. The district court found that "placement in a segregated, special education setting for two-thirds of his day and in a regular classroom for one-third of his day is an appropriate placement for Joel." JA at 49.

Finally, the district court addressed the issues of unrestricted parental visitation and attorney's fees. The district court denied the Guest's request for unrestricted observation stating that it was beyond the express parameters of the IDEA. JA at 50–51. The district court also ruled that neither side was a "prevailing party" and that the parties had to pay their own attorney's fees and costs. JA at 51–52. This appeal followed.

## II.

The Guests filed this appeal seeking to reverse the judgment of the district court, to reaffirm the decision of the ALJ, and to collect attorney's fees as the prevailing party. This Court must first determine whether the district court improperly ruled upon evidence and issues not presented to the ALJ. This Court must then conduct a modified de novo review of the merits of the district court decision and determine whether the district court erred in reversing the decision of the ALJ.

### A. Scope of the Evidence

The Supreme Court has stated that district courts must conduct a two part inquiry when reviewing administrative decisions brought under 20 U.S.C. § 1415(e)(2):

First, has the State complied with the procedures set forth in the Act? And second, is the individualized education program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obli-

gations imposed by Congress and the courts can require no more. *Board of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley,* 458 U.S. 176, 206–207, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). The parties agree that this inquiry governed the district court's review, but they disagree as to whether the district court exceeded the scope of its inquiry.

The Guests argue that the district court only had subject matter jurisdiction to review evidence relating to the 1995–1996 school year and the recommended IEP for the 1996–1997 school year. The district court, however, heard evidence and decided issues concerning the 1996–1997 and 1997–1998 school years. The Guests contend, therefore, that the district court exceeded its jurisdiction when it considered evidence beyond the administrative record developed for the September 1996 administrative hearing and decided issues arising after the administrative hearing.

The Guests' position equates subject matter jurisdiction to administrative exhaustion and links both to the administrative record. The administrative scheme of the Act requires that parents or guardians dissatisfied with their child's identification, evaluation, or placement under the Act can request an administrative due process hearing. *See* 20 U.S.C. § 1415(b)(1)(2). If the parents or guardians are dissatisfied with the results of the hearing, they have the right to appeal the decision to a federal district court. *See* 20 U.S.C. § 1415(e)(2). "Every court that has considered the question has considered this statutory scheme as a requirement for the exhaustion of remedies." *Crocker v. Tennessee Secondary Sch. Athletic Ass'n,* 873 F.2d 933, 935 (6th Cir.1989).

Reviewing courts are statutorily required to review the administrative record from below. *See* 20 U.S.C. § 1415(e)(2). The Supreme Court has stated that the statutory requirement to review the administrative record implies that the federal court give "due weight" to the administrative proceeding. *Rowley,* 458 U.S. at 206,

102 S.Ct. 3034. The Sixth Circuit expanded upon this requirement in *Doe v. Smith,* 879 F.2d 1340 (6th Cir.1989) saying that "[i]n order for a reviewing court to accord 'due weight' to state administrative proceedings, the court must accommodate the procedures contemplated by the Act so that there is an administrative record to review." 879 F.2d at 1344. In *Doe v. Smith,* the Sixth Circuit ruled that the district court should not have considered the propriety of an IEP proposed for the 1987–1988 school year when the plaintiffs failed to request a due process hearing first. *See id.*

This Court has previously given "sound and important" policy rationales for the administrative exhaustion requirement:

> States are given the power to place themselves in compliance with the law, and the incentive to develop a regular system for fairly resolving conflicts under the Act. Federal courts—generalists with no expertise in the educational needs of handicapped students—are given the benefit of expert factfinding by a state agency devoted to this very purpose. Such a mechanism is necessary to give effect to a fundamental policy underlying the [IDEA]: "that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education." Were federal courts to set themselves up as the initial arbiters of the handicapped children's educational needs before the administrative process is used, they would endanger not only the procedural but also the substantive purposes of the Act.

*Crocker,* 873 F.2d at 935.

Plaintiff–Appellee Metro Board disputes that this is a question of subject matter jurisdiction and argues instead that 20 U.S.C. § 1415(e)(2) is controlling:

> In any action brought under this paragraph the court shall receive the records

of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(e)(2). Metro Board argues that the additional evidence it offered was properly admitted for the purpose of deciding whether the original proposed IEP for the 1996–1997 school year was reasonably calculated to enable the child to receive educational benefit.

The Sixth Circuit addressed the issue of what "additional" evidence may be considered by the district court upon review of an administrative proceeding in *Metropolitan Gov't of Nashville and Davidson County, Tenn. v. Cook*, 915 F.2d 232, 234 (6th Cir.1990). The Sixth Circuit declined to adopt the narrow position "that additional evidence is admissible only in limited circumstances, such as to supplement or fill in the gaps in the evidence previously introduced." *Cook,* 915 F.2d at 234. Instead, it adopted a broad interpretation of the term "additional." " 'Additional,' in its ordinary usage, implies something that is added, or something that exists by way of addition. To 'add' means to join and unite; the limitation on what can be joined inherent in the term 'supplement' is not present in the term 'add.' " *Id.*

 In conducting its review of the district court's decision, this Court is mindful both of the administrative exhaustion doctrine and of the statutory mandate to accept additional evidence. Evidence arising from events occurring during the 1996–1997 and 1997–1998 school years was properly admitted by the district court, but only for the purpose of deciding whether the proposed IEP for the 1996–1997 school year was reasonably calculated to lead to educational benefits. *See Rowley*, 458 U.S. at 206–207, 102 S.Ct. 3034 (reasonably calculated standard); *Fuhrmann v. East Hanover Bd. of Educ.*, 993 F.2d 1031, 1040 (3d Cir.1993) ("[E]vidence of a student's later educational progress

may only be considered in determining whether the original IEP was reasonably calculated to afford some educational benefit."). The court holds, therefore, that the district court exceeded its jurisdiction to the extent it used additional evidence to rule upon issues beyond those presented to the ALJ.

The district court lacked authority to evaluate the appropriateness of later proposed IEP's because the Guests did not first seek a due process review of those hearings. *See Doe v. Smith*, 879 F.2d at 1344. The district court committed error, therefore, to the extent it admitted evidence for the purpose of evaluating the later proposed IEPs. The district court exceeded its jurisdiction when it adjudicated the propriety of the Guest's proposal to send Joel to a private, residential facility. Similarly, the district court committed error when it admitted evidence concerning the parents' request for unrestricted observation of Joel at school and when it denied that request in its ruling. Those issues were not before the ALJ in 1996, and the Guests have failed to otherwise exhaust their administrative remedies. The Guests should have been required to seek an impartial due process hearing before bringing those issues before the district court. *See* 20 U.S.C. § 1415; *see also Crocker*, 873 F.2d at 935; *Doe v. Smith*, 879 F.2d 1340, 1344;

## B. Modified De Novo Review

The two part inquiry defined by the Supreme Court in *Rowley* and the statutory mandate of 20 U.S.C. § 1415(e)(2) were set forth above. The Supreme Court has stated that in determining whether the State has complied with the procedures of the Act and whether the IEP developed was reasonably calculated to enable the child to receive educational benefits, the district court is to give "due weight" to the administrative proceedings. *See Rowley*, 458 U.S. at 206, 102 S.Ct. 3034. The Sixth Circuit has called this review a modified de novo review, but neither the Supreme

Court nor the Sixth Circuit has given an exact formulation of what weight is due. *See Doe v. Metropolitan Nashville Public Schs.*, 133 F.3d 384, 386 (6th Cir.1998). This standard of review applies to both the substantive and procedural inquiries into whether the IEP constituted a free appropriate public education. *See Cordrey v. R.J. Euckert*, 917 F.2d 1460, 1468 (6th Cir.1990).

The Sixth Circuit has instructed that the "district court can[not] simply adopt the state administrative findings without an independent re-examination of the evidence." *Id.* at 387. The Supreme Court has admonished, however, that courts are not to "substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley*, 458 U.S. at 206, 102 S.Ct. 3034. Federal courts are "generalists with no expertise in the educational needs of handicapped students." *Crocker*, 873 F.2d at 935. This Court must "apply a clearly erroneous standard of review to the district court's findings of fact and a de novo standard to its conclusions of law." *Tucker v. Calloway Cty. Bd. of Educ.*, 136 F.3d 495, 503 (6th Cir.1998).

Applying a clearly erroneous standard of review, the district court's findings of fact are affirmed. The district court was required to admit additional evidence for the purposes of evaluating the proposed IEP for the 1996–1997 school year as discussed above. The Guests object that the district court ignored important testimony from three expert witnesses who concluded that Joel could be successfully educated in an inclusive environment. The Guests argue that the district court failed to resolve the "conflict" between the expert testimony and the testimony of the school officials who stated that full inclusion had not been successful for Joel. The Guests also argue that the district court ignored testimony that Joel's program failed because it was not properly implemented by the school system.

The Guests' objections regarding the factual findings do not withstand scrutiny. The district court had the responsibility to consider the expert opinions along with the testimony of Joel's educators. The district court explicitly acknowledged that Dr. William Brown and Dr. Joseph McLaughlin opined that Joel should remain in an inclusive setting. JA at 33–34. Dr. Travis Thompson, however, opined that Joel's curriculum was more important than his physical placement. JA at 597. The district court found the educators, who testified as to the difficulties Joel was having in the regular classroom, to be credible witnesses. The district court's findings were not clearly erroneous.

The legal issues which the district court had to address were whether Metro Board followed the procedures as set forth in the Act and whether the IEP proposed by Metro Board for Joel for the 1996–1997 school year was reasonably calculated to provide Joel with educational benefits. *See Rowley*, 458 U.S. 176, 206–07, 102 S.Ct. 3034, 73 L.Ed.2d 690. In regard to the first issue, the ALJ had found that Metro Board officials committed various procedural violations of the Act which had the effect of denying Joel his right to receive a free appropriate public education. JA at 26. The district court concluded that two procedural violations had been established and it affirmed the ALJ's Order on this point. JA at 46. Procedural violations causing substantive harm can cause liability to attach. *See Daugherty v. Hamilton Cty. Schs.*, 21 F.Supp.2d 765, 772 (E.D.Tenn.1998).

Although the district court unfortunately failed to clarify if the procedural violations it found caused substantive harm, there are two indications that the violations did cause substantive harm. First, to the extent the district court was affirming the ALJ on the issue of procedural violations, the district court must have affirmed the ALJ's conclusion that the procedural violations denied Joel a free appropriate public education. Second, the district court in-

cluded a footnote listing a third procedural violation and stating specifically that the third violation did not rise to the level of substantive harm. This statement implies that the first two violations did rise to the level of substantive harm.

Turning to the second legal issue, the district court also had to decide whether the IEP proposed for the 1996–1997 school year was reasonably calculated to provide educational benefit. The ALJ had concluded that although "the decision to move this child to a more restrictive environment may have been appropriate, the facts do not support that decision." JA at 26. The ALJ, therefore, had ordered Joel to remain in a full inclusion program. The ALJ had noted that because of the procedural violations—including that the Metro Board educators had ignored expert opinions and failed to keep sufficient data prior to proposing the 1996–1997 school year IEP—Joel's educational needs were not met. JA at 26.

■ Again, the district court does not explicitly affirm this conclusion of law. It does conclude as a matter of law, however, that the full inclusion remedy ordered by the ALJ had been tried and had failed. As was explained above, the district court exceeded its authority when it made this determination and consequently ordered that Joel be placed in a segregated, special education classroom for two-thirds of his day. This Court appreciates that the district judge was trying to achieve a decision he believed was equitable and in the best interests of the child. The court's job was made more confusing and difficult as neither party sought the district court to affirm the decision of the ALJ. However, it is the function of the state educational experts, acting in conjunction with the handicapped students' parents and guardians, to determine what is in the best interests of the child. *See Rowley*, 458 U.S. at 206, 102 S.Ct. 3034 (admonishing that courts are not to "substitute their own notions of sound educational policy for those of the school authorities which they

review"); *Crocker*, 873 F.2d at 935 (recognizing that courts are "generalists with no expertise in the educational needs of handicapped students"). The district court's authority was limited to a review of the ALJ's decision regarding the IEP proposed for the 1996–1997 school year.

The parties have not presented this Court with sufficient evidence on the issue of procedural violations for this Court to conduct a reasoned de novo review of the district court's decision. On remand, the district court should clarify whether the procedural violations caused substantive harm as its initial opinion implies and as the ALJ found. The district court should also re-examine whether, in light of the administrative record and relevant additional evidence, the IEP Metro Board proposed for Joel for the 1996–1997 school year was reasonably calculated to afford educational benefit. If the district court finds that the procedural violations caused substantive harm, or on any alternative grounds that the proposed IEP was not reasonably calculated to afford education benefits, then the decision of the ALJ should be affirmed and Defendants–Appellants Guests should be declared the prevailing party and receive statutory attorney's fees.

## III.

We **REVERSE** the lower court's opinion and **REMAND** for further proceedings consistent with this opinion.