Aaron C. DONOHO, by and through his parent and next friend, Kathy KEMP, Plaintiffs–Appellees,

v.

SMITH COUNTY BD. OF EDUC., & Robby Richardson, Sup't, Defendants–Appellants.

No. 00–5214.

United States Court of Appeals, Sixth Circuit.

Aug. 9, 2001.

294

Before BOGGS and CLAY, Circuit Judges; and ROBERTS, District Judge.*

BOGGS, Circuit Judge.

This action is brought pursuant to the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.,* essentially claiming that defendants had improperly failed to adhere to, or to revise properly, the "Individual Education Program" ("IEP"), that had been developed for the plaintiff pursuant to 20 U.S.C. § 1414(d). Plaintiff admits that he has failed to exhaust his administrative remedies, but claims that exceptions to the exhaustion requirement apply to his claim. The district court granted summary judgment to the defendants. We affirm.

---

* The Honorable Victoria A. Roberts, United States District Judge for Eastern District of Michigan, sitting by designation.

## I

Aaron Donoho, who has been diagnosed as mildly retarded, is a former student in the special education program at Smith County High School. In April 1997, an IEP was developed for Aaron, indicating that he would receive reading and mathematics instruction in the school environment and would work with the school custodial staff for one to two hours a day. This IEP was applicable through 1997–98 school year. On November 14, 1997, Aaron allegedly told his ·mother that he had not been to any reading or math classes. Aaron told her that he was working "full-time" as a custodian and was being paid $5.37, which he said was a lower rate than received by other student employees. The defendants deny Aaron was "full-time" or paid a lower wage.

Ms. Kemp was surprised and disturbed by what Aaron told her. She called Roger Lewis, the high school principal, who allegedly said he would "jerk her son off work and put him in a classroom" and then hung up. Kemp withdrew Aaron from school. She also contacted the Smith County Board of Education (the "Board") but the Board told her it did not need to take action at this stage of her complaint. Kemp had requested that the Board authorize a home teacher for Aaron and that he work toward a regular rather than special education diploma. Such changes would in effect constitute a new IEP.

Smith County develops IEPs for its special education students through the "M–Team," an interdisciplinary group of professionals, in coordination with parents. On February 3, 1998, pursuant to Kemp's request for a new arrangement for Aaron, Kemp was invited to attend the February 23, 1998 meeting of the M–Team. Special

education teacher (and M–Team member) Lisa Hembree, in her affidavit, stated that she had attempted to arrange an earlier meeting on January 13, 1998, but that Kemp had failed to respond to notices sent to her. The February 3 notice includes a request that Kemp review the brochure "Rights of Children with Disabilities and Parent Responsibilities." This brochure contains an extended discussion of the right to have local decisions reviewed through an impartial hearing offered by the Tennessee Department of Education, and gives contact information for those desiring such review. Hembree stated that she included this brochure in her letter, as she always does. Kemp and Donoho responded to the February letter by returning a signed acknowledgment of receipt on February 6, 1998, in which they indicated they would be at the scheduled meeting.

Kemp and Donoho attended the M-team meeting. Hembree claims that, before the meeting began, she verbally informed Kemp of her parental rights, including her right to an administrative hearing. Hembree's affidavit also relates that she gave Kemp a "Due Process Hearing Request Form." These events are also attested to by the affidavit of Ms. Clark, another M-team member, and by Clark's contemporaneous notes of the meeting. It appears that during the meeting Kemp was informed that a home teacher would not be provided to Aaron without further evidence that this was needed. Although it is not clear from the record, it appears the February 23 meeting ended in a stalemate in which Kemp refused to agree to the IEP.[1] The records of past M-team meetings with Aaron and Kemp, from the years 1992–1996, show signed consent by Kemp to the IEPs developed there; these con-

---

1. Donoho's complaint states that he was "denied a homebound teacher." However, the

complaint never mentions the M-team meeting in any fashion.

sents also show Kemp to have acknowledged familiarity with her parental rights during those years. However, no such consent and acknowledgment for the 1998 meeting is in the record.

Aaron appears to have been kept out of school, and the present complaint was filed in November 1998. The complaint acknowledges the failure to exhaust administrative remedies in ¶ 17, and claims exemption from this requirement because the Board has shown "bad faith" by allegedly ignoring Aaron's 1997 IEP and by denying Kemp's 1998 request for a homebound instructor. Donoh claims that this language was included in the complaint out of "an abundance of caution," and that it was not his burden to demonstrate an exception to the exhaustion doctrine. (Donoho Br. at 8).

The district court addressed two possible exceptions to exhaustion, based on futility of the administrative procedures evaded and on a failure to notify plaintiff of these procedures. The court found Donoho's "bad faith" allegation to be cursory and directed only to the local actions complained of, and thus insufficient to challenge the adequacy of the process provided by the Tennessee Department of Education. The court also rejected Donoho's assertion that no notice of procedural rights had been given, a claim raised for the first time in response to the defendant's motion to dismiss (via an attached affidavit from Kemp). The court reasoned that the evidence that notice had been given was so "one-sided that the defendants must prevail as a matter of law." On appeal. Donoho asserts that the Board has failed to prove its "affirmative defense" that it gave notice to Kemp and that its procedures were not futile. (Donoho Br. at 6). Donoho claims that the district court erred by "weighing the evidence" and judging the relative credibility of

Kemp's affidavit and the opposing affidavits of Clark and Hembree, thus ignoring a genuine issue of material fact.

## II

### Standard of Review

On appeal, we review a grant of summary judgment de novo, using the same Rule 56(c) standard as the district court. *Hansard v. Barrett,* 980 F.2d 1059 (6th Cir.1992). The moving party has the initial burden of proving that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989). The burden then shifts to the nonmoving party to come forward with evidence showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Plaintiffs bringing claims under the IDEA are generally required to exhaust their administrative remedies before bringing a civil action. *Covington v. Knox County Sch. Sys.,* 205 F.3d 912, 915 (6th Cir.2000); *see also Honig v. Doe,* 484 U.S. 305, 326–27, 108 S.Ct. 592, 98 L.Ed.2d 686,(1988) (citing § 1415(e)(2), the predecessor to § 1415(i)(2)); *Crocker v. Tenn. Secondary Sch. Athletic Ass'n,* 873 F.2d 933, 935 (6th Cir.1989) (same). Exhaustion "enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy."

*Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1094 (1st Cir.1989) (discussing the IDEA's predecessor).

There are "narrow exceptions to the exhaustion requirement." *Crocker*, 873 F.2d at 936. "Exhaustion is not required if it would be futile or inadequate to protect the plaintiff's rights. Nor is exhaustion required if the plaintiffs were not given full notice of their procedural rights under the IDEA." *Covington*, 205 F.3d at 917 (citations omitted). The *"burden* of demonstrating futility or inadequacy *rests on the party seeking to bypass the administrative procedures." Ibid.* (citing *Honig*, U.S. 484 at 327 (1988)) (emphasis added). Although we do not appear to have spoken directly regarding the burden when due process violations are asserted, it is a general rule that the "burden of demonstrating an exception from the exhaustion requirement falls on the party seeking to avoid the requirement." *Rose v. Yeaw*, 214 F.3d 206, 211 (1st Cir.2000) (discussing due process violations of the IDEA, among other possible exceptions). Hence, as defendants have met their burden by demonstrating a failure to exhaust, Donoho had the burden to demonstrate a failure to receive notice. *Cf. Waterman by Waterman v. Marquette–Alger Intermediate Sch. Dist.*, 739 F.Supp. 361 (W.D.Mich. 1990) (finding failure to exhaust under IDEA's predecessor where "[p]laintiffs present no evidence ... that defendants intentionally kept them in the dark"). The district court correctly noted that the Board is not required to show the absence of exceptions to the exhaustion requirement as an "affirmative defense," *contra* the plaintiff's interpretation.

The evidence on which Donoho relies to establish the existence of a genuine issue for trial primarily consists of Kemp's affidavit. This affidavit contains the allegations that the school violated the 1997 IEP and describes the unsatisfactory (to Kemp) results of Kemp's attendance at the Smith County Board meeting. The affidavit does state that "[a]t no time, was I informed that I had a right to an administrative hearing or how to request such a hearing." (Kemp Aff., at ¶ 8). It also states that "I was pretty much left out of the decision making process." (Kemp Aff., at ¶ 7). The affidavit, dated February 1999, does not discuss the M-team, the meeting on February 23, 1998 attended by Kemp, or related matters. Donoho complains that the district court improperly weighed the relative credibility of Kemp and the M-team members. However, no credibility judgment is needed. Kemp's affidavit does not, on its face or by justifiable inference, contradict the facts given in the defense affidavits; where there is no inconsistency in the evidence, there is no question of credibility to be weighed. The plaintiff's appellate brief unwisely focuses on the affidavit's use of the phrase "at no time" in order to extend the assertion regarding notice beyond the context of the Board meeting or Kemp's initial contacts with school authorities, the matters which the affidavit discusses.[2] (Donoho Br. at 4). Indeed, later in the same brief the appel-

**2.** Read very broadly, "at no time" would include the previous meetings at which IEPs were developed. Yet Kemp four times signed the records of such meetings in which she explicitly acknowledged receipt of information regarding her procedural rights. A broad reading is also inconsistent with Kemp's current acknowledgment that she at least received an "generic one-page handout" on the topic of the parent's procedural rights. (Donoho Br. at 13). This handout is not specified or referenced, and it is difficult to discern which of the many documents apparently given to Kemp is being referred to, although Donoho characterizes it as something that "fell far short of the standard required." (Donoho Br. at 13).

lant makes the more limited assertion, after discussing Kemp's meeting with the Board, that "*[a]t that time,* she was not informed that she had a right to an administrative hearing or how to request such a hearing." (Donoho Br. at 9) (emphasis added).

Kemp's affidavit or the assertions of the complaint do not establish that Tennessee's administrative procedures are inadequate, or that use of them would be futile. The claims of bad faith and misconduct on the part of school officials and the Board simply repeat the gravamen of the complaint. However, it is precisely because a parent might have legitimate complaints against the local school system that Tennessee and the IDEA provide an administrative procedure to evaluate impartially school conduct regarding children with disabilities. Saying the Board acted wrongfully does nothing to show that this wrong cannot be corrected through the means provided by the state.

■ To the extent Donoho has gone beyond his complaint to allege, on the basis of lack of notice, that Tennessee's procedures are inadequate, his assertion falls under the second exception to the exhaustion doctrine.[3] Kemp's affidavit does not establish a genuine issue as to whether Kemp had no notice of her procedural rights as Donoho's parent. Although we have not delineated exactly what failures in notice will excuse exhaustion, the IDEA requires notice to parents of their procedural safeguards, "(A) upon initial referral for evaluation; and (B) upon each notification of an individualized education program meeting and upon reevaluation of the child; and (C) upon registration of a complaint under subsection (b)(6) of this section." 20 U.S.C. § 1415(d)(1)

Hence, even assuming the truth of Kemp's claim that she was not informed of her procedural rights when she went to the Board meeting, this was not a circumstance in which such notice was required. Kemp acknowledges receipt of at least a "generic one-page handout" given "at the outset," and has attended meetings over several years at which she acknowledged notice of her procedural rights, showing compliance with § 1415(d)(1)(B) in past years. Her affidavit does nothing to challenge the evidence put forward by the defendants that the last IEP meeting, occasioned by her complaint, also included provision to her of the apparently usual verbal and written notices of her rights. Only a strained reading of the affidavit generates even conclusory assertions that Kemp knew nothing about her rights to an administrative hearing.[4] Because no reasonable fact-finder could find, based on the record, that Kemp had no notice of her right to a due process hearing prior to filing her civil action, summary judgment on this question is appropriate and no genuine issue exists as to absence of an exception to the exhaustion requirement.

## III

For the for going reasons, we AFFIRM the decision of the district court dismissing

---

**3.** Donoho does not claim that Tennessee does not require parental notice; instead he claims *Ms. Kemp* did not receive notice from *the school,* and a single instance does not establish a structural defect in state procedures.

**4.** Indeed, the complaint itself acknowledges the fact that there are administrative procedures it is attempting to bypass, and also shows that Kemp and Donoho knew they were under a general duty to exhaust these procedures. *See Christopher W.,* 877 F.2d at 1097 (refusing to find a due process violation sufficient to excuse exhaustion when the course of litigation demonstrates that the plaintiff had actual knowledge of his administrative remedies).

this action for failure to exhaust adminis-
trative remedies.

