**Brian KUSZEWSKI, a minor, by his parents, Richard KUSZEWSKI and Cindy Kuszewski, Plaintiffs,**

v.

**CHIPPEWA VALLEY SCHOOLS, Defendant.**

No. 96–74316.

United States District Court, E.D. Michigan, Southern Division.

Feb. 7, 2001.

Robert A. Kuhr, Grosse Pte. Farms, MI, John G. Makris, Troy, MI, Stewart R. Hakola, Marquette, MI, for Plaintiffs.

Robert A. Lusk, Cara L. Brott, Keller, Thoma, et al., Detroit, MI, for Defendant.

## OPINION AND ORDER

FEIKENS, District Judge.

### I. INTRODUCTION

Plaintiffs, Richard and Cindy Kuszewskis, appeal the administrative decision that held that the Chippewa Valley Schools (CVS) provided their son Brian a free appropriate public education (FAPE) as required by the Individuals with Disabilities Education Act (IDEA). *20 U.S.C. § 1400, et seq.* (2000). The Kuszewskis contend that the CVS denied Brian a FAPE and raise several issues on appeal. In reviewing the administrative decision to determine whether Brian received a FAPE from the CVS, the sole issues remaining are whether the Kuszewskis are entitled to reimbursement for Brian's private educational costs and attorney fees for this litigation. To decide these questions I must first determine that the CVS denied Brian a FAPE. If Brian was denied a FAPE, then further inquiry will be necessary to determine the above reimbursement costs. Notwithstanding this appeal before me, the parties are working on a new individual educational plan (IEP) for Brian to address his current and future educational needs.

### II. FACTUAL BACKGROUND

Brian Kuszewski (Brian) was a student in the Chippewa Valley School District until August 25, 1999, when his parents withdrew him and placed him in a non-public school. Brian is a "child with a disability" within the meaning of the IDEA. *20 U.S.C. § 1400,* et seq. (2000). To meet the requirements of the IDEA, the CVS must provide Brian with a free appropriate public education (FAPE). *20 U.S.C. § 1412*(a)(1)(A) (2000). To meet this goal, the CVS is required to develop an IEP for Brian which evaluates his current educational level and determines methods to enhance his ability to be educated. *20 U.S.C. § 1414(d)(2)(A)* (2000).

This case has been before me since September 1996. The facts are set forth in previously published opinions and I refer to them to provide specific background. *Kuszewski v. Chippewa Valley Schools,* 51 F.Supp.2d 812 (E.D.Mich.1999); *Kuszewski v. Chippewa Valley Schools,* 2000 WL 1568759 (E.D.Mich.2000). In summary, in my first opinion, I granted CVS' summary judgment motion and required the Kuszewskis to proceed through the required administrative due process hearings before bringing a claim before me. In my second opinion, I denied CVS' motion for summary judgment, holding the Kuszewskis properly complied with the Michigan Administrative Code by timely appealing the decision of the local hearing review officer (LHO) to the state hearing review officer (SHRO). *Mich. Admin. Code R.* 340.1725(1) (2000).

The IEP that is the subject of this dispute is dated November 9, 1999, and was initially approved by the Kuszewskis but they then revoked their approval and initiated a due process hearing to dispute the IEP's adequacy. In a forty-three page written report the SHRO, William P. Sosnowsky, evaluated the Kuszewskis' claims and determined that they lacked merit and held that the CVS provided a FAPE for Brian.[1] I held a hearing on this matter on December 4, 2000.

---

**1.** The report states, "[t]he SHRO, therefore, finds that the IEP of 11–09–98 is reasonably

■ I note that, in accordance with both federal and Michigan law, parents who object to an IEP may request a due process hearing to determine whether the IEP provides a FAPE. *20 U.S.C. § 1415*(f)(1) (2000); *Mich. Admin. Code R.* 340.1724 (2000). In Michigan, this is a two-step process in which an appointed local hearing officer conducts an initial hearing on the IEP. *20 U.S.C. 1415*(f)(1) (2000); *Mich. Admin. Code R.* 340.1724 (2000). If either party disputes the decision of the LHO, they may appeal this decision to the Michigan Department of Education for a hearing before a state hearing review officer (SHRO). *20 U.S.C. 1415*(g) (2000); *Mich. Admin. Code R.* 340.1725(1) (2000). If either party disputes the findings of the SHRO, they have the right to a court review of the administrative process. *20 U.S.C. 1415*(i)(2)(A) (2000). The Kuszewskis have the burden of showing by a preponderance of the evidence that Brian's IEP was inadequate. *Renner v. Board of Education of the Public Schools of the City of Ann Arbor*, 185 F.3d 635, 642 (6th Cir.1999).

## III. DISCUSSION

■ Under IDEA, I use a "modified de novo" standard for reviewing state administrative decisions. *Doe v. Board of Education of Tullahoma City Schools*, 9 F.3d 455, 458 (6th Cir.1993). I am required to conduct an independent reexamination of the evidence. *Renner v. Board of Education of the Public Schools of the City of Ann Arbor*, 185 F.3d 635, 641 (6th Cir.1999). This requires me to perform a de novo review, but the fact that IDEA requires me to "receive the records of the [state] administrative proceedings carries with it the implied requirement that due weight shall be given to these proceedings." *Tucker v. Calloway County Board*, 136 F.3d 495, 501 (6th Cir.1998) (quoting *Board of Education of Hendrick Hudson Central School Dist. Westchester County v. Rowley*, 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)). "[A]dministrative findings in an IDEA case may be set aside only if the evidence before the court is more likely than not to preclude the administrative decision from being justified based on the agency's presumed educational expertise, a fair estimate of the worth of the testimony, or both." [2] The district court is considered to be a generalist in these matters and should not "substitute their own notions of sound educational policy for those of the school authorities which they review . . ." *Rowley* at 206, 102 S.Ct. 3034.

■ In determining whether the state has complied with IDEA, a court must not only "satisfy itself that the State has adopted the plan, policies, and assurances required by the Act, but also to determine that the State has created an IEP for the child in question which conforms to the requirements of § 1401(19)." *Rowley* at 206–07, n. 27, 102 S.Ct. 3034 (§ 1401(19) has been amended to 20 U.S.C. § 1414(d)(1)(A) (2000)). *Rowley* requires a two-step inquiry by the evaluating district court. First, the court determines whether the state has complied with the procedures set forth in IDEA. *Burilovich v. Board of Educ. of Lincoln Consolidated Schools*, 208 F.3d 560, 565 (6th Cir.2000). Second, a determination is made to assess

---

calculated to provide educational benefits, and to enable Brian to receive a FAPE to his maximum potential, in the least restrictive environment." (SHRO Report p. 36).

2. The amount of weight due depends upon whether such expertise is relevant to the decision-making process. Therefore, less weight is due to an agency's determinations on matters for which educational expertise is not relevant, so that a federal court would be just as well suited to evaluate the situation. More weight is due to an agency's determinations on matters for which educational expertise would be relevant. The deference due to the administrative findings is less than that generally accorded to administrative decisions, whereby the court will uphold a decision if it is supported by substantial evidence. *Burilovich v. Board of Education of the Lincoln Consolidated Schools*, 208 F.3d 560, 567 (6th Cir.2000).

whether the IEP developed through the Act's procedures is reasonably calculated to enable the child to receive educational benefits. *Id.* Michigan has added to this standard by requiring that an IEP be designed to develop the "maximum potential" of a child. *Mich. Comp. Laws. Ann.* §§ 380.1701(a), 380.1711(a), 380.1751(1) (West 1997).

## A. ADEQUACY OF THE ADMINISTRATIVE HEARING PROCESS

The Kuszewskis claim that they have been denied due process rights required by the administrative hearing process because the LHO ruled the hearing moot, after six days of testimony, when the Kuszewskis announced that Brian was being taken out of the CVS School and placed in a private school. They claim that the SHRO improperly denied them the right to have witnesses testify and affirmed the procedural decision of the LHO.

■ The Kuszewskis claim that their act of removing Brian from the CVS should not have ended the due process hearing being conducted by the LHO. While the Kuszewskis' act of unilaterally removing Brian from the CVS and placing him in a private school did not waive their right to seek redress under the IDEA *(Doe v. Smith,* 879 F.2d 1340, 1343 (6th Cir.1989)), and although the Kuszewskis violated the "stay-put" provision of the IDEA, a determination still should have been made by the LHO as to whether a FAPE was provided. *20 U.S.C. § 1415(j)* (2000).

■ Even though the LHO erred by dismissing the appeal as moot, there was no injury to the plaintiffs because any defect was cured by the SHRO's full review of the IEP. I find that the error by the LHO did not prejudice the Kuszewskis' administrative appeal. It is clear from the SHRO report that even though the SHRO determined that the LHO was correct in dismissing the case as moot, he still continued to address the procedural and substantive issue raised by the Kuszewskis. The SHRO's decision was based on the administrative record compiled by the LHO and supplemented by briefs submitted by the parties.

## B. PROCEDURAL COMPLIANCE

### 1. Stay-Put Requirement

■ The Kuszewskis argue that Brian is entitled to annually updated IEPs during the pendency of this litigation. These issues were identified by the LHO and SHRO as issues number one, two, three, four, eleven, twenty, twenty-three, and twenty-four.[3] This litigation originally began on August 19, 1996, in Macomb County Circuit Court before being removed to this court, when the Kuszewskis filed this lawsuit. The current IEP was for the 1995–1996 school year (accepted on May 5, 1995). This IEP was then updated at my direction and a new IEP was adopted on November 9, 1998. The Kuszewskis claim that between June of 1995 and through this past school year that the CVS failed to update the IEP yearly and failed to provide evaluations that they requested for Brian.

According to the IDEA, once an appeal or civil litigation has begun the then-current IEP is to operate as the IEP until the end of the appeal process or litigation. *20 U.S.C. § 1415(j)* (2000). Unless the parties mutually agree to changes in the IEP, the current IEP is to remain in place until

---

**3.** The LHO and SHRO identified the Kuszewskis' issues numerically and these numbers have been used throughout the litigation before me to identify their arguments. Several of the arguments made before the LHO and SHRO were abandoned by the Kuszewskis' attorney at the hearing on December 4, 2000. These were issues 8, 15, 16, 17, 18, 21, 22, 25, and 26. The Kuszewskis dropped issues 6 and 10 in their brief submitted in support of this appeal. Additionally, the Kuszewskis' attorney also admitted, at the Summary Judgement Hearing on September 18, 2000, that the determination of a FAPE was only being sought to recover reimbursement for private educational expenses and attorney fees.

a resolution has been reached. *Id.* This statutory section is referred to as the "stay-put" injunction. IDEA's "stay-put" injunction requires the then-current IEP is to control until the completion of the appeal through both the state administrative process and review by a district court. *20 U.S.C. § 1415(j)* (2000). As such, the November 9, 1998 IEP now serves as the "stay-put" IEP for this current litigation and I must determine whether the CVS schools were required to provide updated IEPs during the "stay-put" injunction.

I find that the CVS was not required to update Brain's IEP during the "stay-put" injunction. This issue was heard in a "complaint hearing" on July 9, 1999 and before the LHO and SHRO. There is no reason that the CVS should have implemented updated IEPs during this litigation. It is clear from the history of this case that the parents would have objected to any new IEPs and would have caused additional levels of this dispute to develop. It would be futile to continue to add to this dispute by requiring new IEPs every year when the CVS was statutorily required to operate under the "stay-put" IEP.

In the alternative, even if the CVS should have implemented annual IEPs during the pendency of this litigation, there is no proof that Brian was harmed by this perceived procedural violation. I do not find that the failure to annually update the IEP resulted in any substantive harm to Brian. *Knable v. Bexley City School District,* 238 F.3d 755, 764 (6th Cir.2001). The determination of FAPE depends on the November 9, 1998 IEP and annually updated IEPs offer no help in determining whether the November 9, 1998 IEP is adequate.

■ The Kuszewskis' claim for reimbursement for private evaluation expenses is denied. The CVS was under no duty to pay these costs to the Kuszewskis. The Kuszewskis did not indicate a disagreement with the CVS evaluation prior to obtaining a private "independent educational evaluation" (IEE). *34 C.F.R.*

*§ 300.502(b)(1)* (2000). To obtain reimbursement for such an IEE the parents must first give the CVS the opportunity to either defend their evaluation in a due process hearing or agree to allow the parents to take the child for an IEE. *34 C.F.R. § 300.502(b)(3)* (2000). The Kuszewskis' failure to dispute the results of the district's evaluation rendered moot a due process hearing or an opportunity for CVS to pay costs.

### 2. Complaint Issues

■ Next the plaintiffs claim that they were improperly excluded from presenting four of their arguments before the LHO and SHRO because they were excluded as "complaint issues" and therefore not hearable in these proceedings. The LHO and SHRO identified these arguments as issue number twelve, thirteen, and fourteen. In Michigan, there exist two separate forms of hearings. In the due process hearing currently being appealed by the Kuszewskis, they are able to dispute any aspect of the IEP that relates to:

> [I]dentification, evaluation, special education program, educational placement of the person, or the provision of special education programs or services designed to develop the maximum potential of the person who is disabled.

*Mich. Admin. Code R.* 340.1723a(1)(a) and (b) (2000). This is referred to as a Part 2 hearing. A separate provision is established to address issues of compliance with an existing IEP. *Mich. Admin. Code R.* 340.1701(g) and 340.1853 (2000). This provision addresses whether the school district has complied with the existing requirements established by the IDEA. This provision is referred to as a Part 8 hearing.

The plaintiffs were properly excluded from presenting "complaint issues" to the LHO and SHRO. The LHO and SHRO excluded these issues for lack of jurisdiction. These "complaint issues" should have been brought under the Part 8 hear-

ing process. *Id.* The Kuszewskis were aware of these separate procedures because they had instituted both forms of hearings for Brian. In July of 1999, in a local level complaint hearing, the Kuszewskis presented complaint issues for review and the hearing officer found that they lacked merit. (Defendant's Brief Regarding Plaintiff's Issues on Appeal, Exhibit F). The plaintiffs cite to case law that they believe supports their position that these hearings are not mutually exclusive and they believe should be combined into one hearing. *Waterman v. Marquette–Alger Intermediate School District,* 739 F.Supp. 361 (W.D.Mich.1990). The Kuszewskis misinterpret this case as it clearly states that these hearings may occur simultaneously, not meaning together in one hearing, but rather in a separate Part 2 and Part 8 hearing occurring at the same time. *Id.* at 367.

### 3. Inclusion of Experts

The plaintiffs claim that the CVS failed to include the input of their expert (Ms. Fosselman) and CVS' own expert (Dr. Hessler) in the formation of Brian's IEP. The LHO and SHRO identified this as issue number five. According to IDEA, the parents have the right to include "evaluations and information" about the child. *20 U.S.C. § 1414(c)(1)(A)* (2000). The SHRO found that there were "several indications in the record that the members of the IEP Team repeatedly considered the evaluation of Dr. Hessler, as can be readily seen in the IEP of 11–09–98." (SHRO Report at p. 33). I agree with the SHRO that Dr. Hessler's opinion was considered in the formulation of the IEP.

As for the inclusion of Ms. Fosselman, the SHRO used extrinsic evidence to conclude that Ms. Fosselman was included by telephone conference call and free to make any recommendations. The Kuszewskis had the right to include their own experts in the IEP meeting. *34 C.F.R. 300.344(a)(6)* (2000). This regulation does not require the CVS to follow the Kusz-

ewskis' expert's recommendation. Additionally, the SHRO determined that Ms. Fosselman agreed with the proposed IEP. (SHRO Report at p. 34). The SHRO properly determined that Ms. Fosselman was involved in the IEP formation meeting and was allowed input.

### 4. Communication between the CVS and the Kuszewskis

The Kuszewskis claim that Brian was denied a FAPE by insufficient communication with the CVS. The LHO and SHRO identified these as issues number twelve and thirteen. It is clear from the record before me that there was abundant communication between the plaintiffs and the defendant. Further, the regulations implementing IDEA only require the same type of communication between IDEA students and the district as non-IDEA students. *34 C.F.R. 300.347(a)(7)* (2000). This regulation means that if Brian received regular report cards at the same time as the other children under CVS' tutelage, then CVS was in compliance with IDEA. The Kuszewskis' attorney admitted at the hearing on this appeal, on December 4, 2000, that Brian received regular report cards. The fact that independent experts hired by the Kuszewskis thought that more communication was desirable is not determinative of this issue. Further, the SHRO properly determined that these were complaint issues because they deal with the CVS compliance with the current IEP.

### 5. Measurable Goals

The Kuszewskis believe that the November 9, 1998 IEP does not provide measurable goals and objectives as required by the IDEA. The LHO and SHRO identified this as issue number seven. IDEA requires that the IEP provide legally measurable goals. *20 U.S.C. § 1414(d)(1)(A)* (2000) and *34 C.F.R. 300.347(a)(2); 300.347(a)(3)* (2000). After one and a half pages of discussion by the SHRO, he concluded that "the IEP of 11–09–98 provided legally

measurable goals, including sufficiently objective criteria by which Brian's progress can be measured." (SHRO Report at p. 35).

■ Brian's IEP contains a series of tables divided into each academic subject area that contains the "short term objectives", "performance criteria", "evaluation procedures", and "schedules for evaluation." (11–09–98 IEP ¶ 24–33). Applying the proper deference to the decision of the SHRO, it is clear to me that the IEP provides Brian with the statutorily required measurable goals. *20 U.S.C. § 1414(d)(1)(A)* (2000) and *34 C.F.R. 300.347(a)(2); 300.347(a)(3)* (2000). The IEP addresses each subject area and then goes on to discuss how improvements will be evaluated and at what intervals. Contrary to the belief of the plaintiffs, the CVS provided Brian with measurable goals. Plaintiff's want quantitative numerical goals but this goal is not required under the IDEA.

### 6. Methodology Decisions

■ Finally, the Kuszewskis argue that certain issues were improperly excluded as methodology decisions. The LHO and SHRO identified this argument as issue number nine and nineteen. The plaintiffs claim that a paraprofessional should have been provided to Brian with specific training and that cursive writing should have been included in his curriculum. The SHRO decided that these two issues were methodology decisions that were properly left to the discretion of the CVS.

The Sixth Circuit has stated that, "[p]laintiffs are not entitled to prescribe or require a specific desired methodology . . ." *Renner v. Board of Education of the Public Schools or the City of Ann Arbor,* 185 F.3d 635, 645 (6th Cir.1999) (citing to *Rowley,* 458 U.S. at 208, 102 S.Ct. 3034; *Lachman v. Illinois State Board of Education* 852 F.2d 290, 297 (7th Cir.1988); *Roland M. v. Concord School Committee,* 910 F.2d 983, 993 (1st Cir.1990); *Tucker v. Callo-*

*way County Board of Education,* 136 F.3d 495, 505 (6th Cir.1998); *Barnett v. Fairfax County School Board,* 927 F.2d 146, 152 (4th Cir.1991)). The case law fully supports the decision of the SHRO. I find that the Kuszewskis were not denied a FAPE by the SHRO in the determination of these two issues.

### C. EDUCATIONAL BENEFITS

■ I hold that the IEP created by the CVS with the Kuszewskis' participation provided Brian an IEP that is reasonably calculated to enable him to receive educational benefits. *Burilovich v. Board of Educ. of Lincoln Consolidated Schools,* 208 F.3d 560, 565 (6th Cir.2000). Evaluating the IEP under the Michigan higher standard of "maximum potential," Brian also received a FAPE. *Mich. Comp. Laws. Ann.* §§ 380.1701(a), 380.1711(a), 380.1751(1) (West 1997). The standard that has been set by the State of Michigan does not require Brian to receive the "best education possible." *Dong v. Board of Education of the Rochester Community Schools,* 197 F.3d 793, 803 (6th Cir.1999). As such, Brian received an IEP that allowed him to be educated to his "maximum potential."

### IV. CONCLUSION

I have examined the record, the briefs, the SHRO's report and find that the SHRO's decision that the CVS provided Brian a FAPE is well supported by the evidence. I see no reason to have additional testimony on these issues. I have the discretion to determine whether "additional evidence" is required and I find that it would not be beneficial in this case and would only serve to "undercut the statutory role of the administrative expertise . . ." of the SHRO. *Metropolitan Government of Nashville and Davidson County, Tennessee v. Cook,* 915 F.2d 232, 234–35 (6th Cir.1990). Giving due weight to the SHRO decision, I conclude that the IEP was designed to allow Brian to achieve his "maximum potential." Brian received a

FAPE from his November 9, 1998 IEP and no further inquiry is necessary in this case. The Kuszewskis are not entitled to recover private educational expenses because Brian received an FAPE from CVS. *20 U.S.C. § 1412(a)(10)(C)(ii)* (2000). Attorney fees are only awarded to those "parents of a child with a disability who is the prevailing party." *20 U.S.C. § 1415(i)(3)(B)* (2000). The Kuszewskis are not prevailing parties in this case because they did not succeed in proving that Brian's IEP was inadequate and denied him a FAPE. *Id.* It appears to me that a proper resolution is not a rehash of prior IEPs but rather a preparation of a new IEP on which the parties are embarked.

**IT IS SO ORDERED.**