290 F.Supp.2d 832 (2003)
LEWIS CASS INTERMEDIATE SCHOOL DISTRICT and Edwardsburg Public Schools, Plaintiffs/Appellants,
v.
M.K., on behalf of the minor child J.K., Defendants/Appellees.
No. 5:02-CV-141.
United States District Court, W.D. Michigan, Southern Division.
November 14, 2003.
*833 Michael L. Bevins, LaPointe & Associates, P.C., Okemos, MI, for plaintiffs.
Kary M. Love, West Olive, MI, for defendants.

OPINION
QUIST, District Judge.
This case involves allegations that an intermediate school district did not provide a free appropriate public education to a hearing-impaired student in accordance with the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1405. Before the Court is Plaintiffs', the Lewis Cass Intermediate School District and the Edwardsburg Public Schools (the "Districts"), motion for judgment on a closed record. The motion petitions the Court to reverse a state administrative decision granting J.K., the son of Defendant/Appellee M.K., the right to a due process hearing before a local hearing officer to discuss "complaint issues" related to his prior special education. For the reasons set forth below, the Court will deny the Districts' motion, enter judgment on a closed record for Defendants/Appellees, and affirm the decision of the state review officer.

Factual and Procedural Background
J.K., the son of Appellee M.K., is a hearing-impaired minor student eligible for special education programs and related services under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1485, and the Michigan Mandatory Special Education Act ("MMSEA"), M.C.L. §§ 380.1701-.1766. While residing in the Lewis Cass Intermediate School District ("ISD"), J.K. attended the Edwardsburg Public Schools and received special education services from the ISD.[1]
On October 17, 2000, the ISD developed an Individualized Education Program ("IEP") for J.K., which placed him in a hearing-impaired classroom. On May 11 and 15, 2001, M.K. filed letters of complaint with the ISD and the Michigan Department of Education ("MDE") pursuant to Part 8 of the Michigan Revised Administrative Rules for Special Education. Among other things, M.K. alleged that the ISD failed to provide J.K. a teacher endorsed in hearing impairments, necessary speech and language services, and an interpreter, and he requested compensatory education for the alleged violations. At the same time, M.K. noted that he was not able to send J.K. to school because they were no longer residents of the District.
*834 On May 25, 2001, two days after "disenrolling" J.K., the ISD issued a "Special Services Investigation Report" ("ISD report") regarding the allegations. The report exonerated the ISD of the allegation that it failed to provide a teacher for the hearing impaired, but it did find that the ISD failed to provide necessary speech and language services and an interpreter, with the remedy consisting of the provision of compensatory educational services and proper implementation of the IEP.
On June 10, 2001, M.K. appealed the ISD report to the MDE, which issued its own investigation report on August 7, 2001. As with the ISD report, the MDE report found no violation with regard to the ISD's alleged failure to provide a teacher for the hearing impaired, the only issue raised on appeal. In addition, the MDE report directed the provision of compensatory speech and language services to all students similarly situated and affirmed the corrective action regarding the interpreter.
Approximately two months later, on August 14, 2001, M.K. sent a letter to the ISD to request a due process hearing "over all the allegations contained in the complaint" and "over the letter dated May 23, 2001, written by Kevin Magnin [sic] stating he has directed staff to `disenroll [J.K.] effective May 23, 2001.'"
On November 2, 2001, Michael Bevins, counsel for the Districts, and Kary Love, counsel for M.K., informed James Flaggert ("Flaggert") that they had agreed upon him to serve as the local hearing officer ("LHO"). The parties held an initial prehearing conference call on or around November 29, 2001, and less than a month later, on December 21, 2001, LHO Flaggert orally granted the Districts' motion to dismiss on two grounds: 1) complaint issues cannot be raised in a due process hearing; and 2) the matter was moot because M.K. and J.K. had moved out of the District.
M.K. appealed LHO Flaggert's decision on January 15, 2002, claiming that LHO Flaggert had erred in granting the Districts' motion to dismiss. On January 17, 2002, the day on which LHO Flaggert issued his formal decision, the MDE advised Lynwood Beekman ("Beekman") that it had appointed him as the state review officer ("SRO") in the matter, and between February and March 2002, the parties filed their briefs before SRO Beekman.
In his decision of March 28, 2002, SRO Beekman, having thoroughly reviewed the case law and special education interpretive rulings regarding due process hearing rights, reversed the decision of LHO Flaggert and ordered the ISD to hold a due process hearing. The Districts filed a motion for reconsideration on May 24, 2002, and M.K. filed a response opposing the motion on June 7, 2002. On July 11, 2002, SRO Beekman affirmed his prior decision, and the Districts timely filed an appeal to this Court.

Standard of Review
Under the IDEA, a "party aggrieved by the findings and decision" of an administrative proceeding may "bring a civil action ... in a district court of the United States." 20 U.S.C. § 1415(i)(2)(A). The Sixth Circuit has held that district courts are to use a "modified de novo" standard to review state administrative determinations regarding the IDEA. Doe v. Bd. of Educ., 9 F.3d 455, 458 (6th Cir. 1993). This means that, in performing a "de novo" review, a court "should give due weight to the state administrative proceedings in reaching its decision." Id. (quoting Roncker ex rel. Roncker v. Walter, 700 F.2d 1058, 1062 (6th Cir.1983)).

*835 Discussion

The Districts raise two main arguments in their appeal of the decision of SRO Beekman: 1) "complaint issues" already submitted pursuant to the Part 8 complaint procedure are not within the jurisdiction of a due process hearing officer; and 2) M.K. lacked standing at the time of the due process hearing request, and his move to Indiana mooted all claims against the previous school district, including the right to compensatory educational services. The Court will examine each of these in turn.

I. Jurisdiction
The Districts argue that SRO Beekman made two errors with regard to jurisdiction. "First, the SRO erred by finding that `complaint issues' (issues relating to the implementation of an IEP, rather than its content) are within the jurisdiction of the local due process hearing officer. Second, the SRO erred by finding that the issues decided through the state Complaint Procedure may properly be reviewed through an administrative due process hearing, rather than the appropriate appeal process provided by state law." (Pls.' Br. Supp. Mot. for Judg. on Closed R. at 13.)

A. Whether "Complaint Issues" Are Within the Jurisdiction of a Due Process Hearing Officer
With regard to the first alleged error, the Court has examined the relevant case law and the United States Department of Education's Office of Special Education Programs ("OSEP") interpretive rulings that SRO Beekman cited in his Decision of March 28, 2002, as well as the Michigan Administrative Code sections pertaining to special education due process hearings. Upon review, the Court concurs with SRO Beekman's finding that "complaint issues" are within the jurisdiction of the LHO.
The Districts contend that SRO Beekman should have followed the "authoritative interpretation" of the Eastern District of Michigan, in Kuszewski ex rel. v. Chippewa Valley Schools, 131 F.Supp.2d 926 (E.D.Mich.2001), aff'd on other grounds, 2003 WL 124030 (6th Cir.2003). In Kuszewski, the court held that "[t]he plaintiffs were properly excluded from presenting `complaint issues' to the [local hearing officer] and [state hearing review officer]. The LHO and SHRO excluded these issues for lack of jurisdiction. These `complaint issues' should have been brought under the Part 8 hearing process." Id. at 931-32.
Nearly one year after the Kuszewski decision, however, and before SRO Beekman received this case, SRO Beekman was presented with another IDEA case, Brandywine Public School District, 103 LRP 20891 (Mich.2002), in which he reexamined his prior decisions denying the introduction of "complaint issues" in a due process hearing. In Brandywine, SRO Beekman reviewed material either unavailable or not accessed at the time of the Kuszewski decision, including the most recent interpretive rulings of OSEP, the federal agency responsible for administering the IDEA. SRO Beekman ultimately reached a different conclusion than the Kuszewski court[2]: a party could raise "complaint issues," even those already submitted under the Part 8 complaint procedure, in a due process hearing.
When the present dispute reached SRO Beekman only a couple months after the Brandywine decision, it bore some striking similarities to his previous case: the same attorneys, Michael Bevins and Kary Love; *836 the same LHO, James Flaggert; and the same jurisdictional debate. Therefore, perhaps not surprisingly, SRO Beekman followed the same approach as Brandywine and reached the same conclusion. Having received this case on appeal from the state administrative proceeding, the Court has conducted an independent review of the law surrounding IDEA due process hearing rights and agrees with the judgment of SRO Beekman.

1. OSEP Over the Last Decade

Under the pertinent sections of the IDEA, codified at 34 C.F.R. § 300.503(a)(1)-(2) and 34 C.F.R. § 300.507, the federal regulations state that "[a] parent or a public agency may initiate a hearing on any of the matters ... relating to the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE (`free appropriate public education') to the child." 34 C.F.R. § 300.507(a)(1) (emphasis and parenthetical added).
In recent years, OSEP has interpreted the IDEA regulatory language to mean, among other things, that a parent may utilize the hearing process, in addition to the complaint process, to present any allegation that a district has violated the IDEA, i.e., "complaint issues". See Letter to Chief State Sch. Officers, 34 IDELR ¶ 264 (OSEP 2000); Letter to Anonymous, 25 IDELR ¶ 525 (OSEP 1996); Letter to Lieberman, 23 IDELR ¶ 351 (OSEP 1995). The Letter to Chief State School Officers explicitly makes this point in its "Question and Answer" section, which touches on the relationship between the state complaint resolution and due process hearing systems. See Letter to Chief State Sch. Officers, 34 IDELR § 264 at 988-89. For example, the Digest of Response includes the following questions and answers:
Question 3: Can an issue(s) that is the subject of a State complaint also be the subject of a due process hearing?
Answer: Yes, as long as the issue(s) is an alleged violation of Part B of the IDEA or its applicable regulations [Regulations of the Offices of the Department of Education] and it relates to the child's identification, evaluation, or educational placement or the provision of FAPE to the child, it could also be the subject of a due process hearing....
Question 4: If a complainant has already filed a State complaint which has not been resolved, can he or she still request a due process hearing?
Answer: Yes. Filing State complaints does not prevent complainants from requesting a due process hearing. In some cases, the complaint may also be the subject of a due process hearing, or may contain multiple issues of which one or more may be part of the hearing. ...
Question 10: May a State complaint decision be appealed?
Answer: The regulations are silent as to whether a state complaint decision may be appealed. Part B neither prohibits nor requires the establishment of procedures to permit either party to request reconsideration of a State complaint decision....
....
However, if the issue(s) is still in dispute, the parent or public agency may, if they have not already done so, initiate a due process hearing. ...
Id. (emphasis added).
In short, OSEP construes the IDEA as granting a parent or public agency the right to raise "complaint issues" related to the "provision of FAPE to the child" in a due process hearing. See id. Since allegations regarding improper implementation of an IEP, as is the instant case, necessarily relate to the "provision of FAPE to the child," the parent in this *837 case, M.K., has the right to raise his "complaint issues" in a due process hearing.

2. State-level Rulings

The Districts argue that it is error to afford "the federal department's (OSEP's) interpretive rules more deference than the interpretive rules of the Michigan Department of Education when considering the Michigan complaint process; a process created by state law." (Pls.' Br. Supp. Mot. for Judg. on Closed R. at 21 (parenthetical added).) However, the Districts provide neither Michigan interpretive rulings nor binding case law contrary to the interpretive rulings of OSEP. Furthermore, the Michigan Administrative Code sections pertaining to special education due process hearings contain language nearly identical to that found in the federal regulations. Rule 340.1724(1) of the Michigan Administrative Code states:
Rule 24. (1) A parent, the school district of residence, the school district of operation, the Michigan schools for the deaf and blind, or the department may initiate a hearing on any of the matters relating to the identification, evaluation, educational placement of the student, or the provision of a free appropriate public education. ...
Mich. Admin. Code R. 340.1724(1) (emphasis added). Given the similarity between the federal and state regulations, and absent any contrary state rulings or binding precedent, the Court finds the interpretive rulings of OSEP persuasive. Therefore, this argument is rejected.

B. Whether a Due Process Hearing Constitutes an Improper Appeal of an Agency Decision
The Districts also argue that SRO Beekman committed a second jurisdictional error in "finding that a party may request a due process hearing following a final agency decision," (Pls.' Br. Supp. Mot. Judg. on Closed R. at 18), since, according to the Districts, "the appropriate forum to contest the final agency decision in a Part 8 Complaint is appeal by way of § 631 of the Revised Judicature Act, M.C.L. 600.631." (Id. at 14.) "Under § 631, a party aggrieved by a final agency decision would be permitted to file an action in state circuit court...." (Id. at 16.)
While the Districts correctly assert that the MDE provides for such an appeal, this state-established procedure cannot trump a party's right to a due process hearing granted under the IDEA. Therefore, the Court rejects this argument.

II. Mootness
The Districts contend that even if a party can raise "complaint issues" in a due process hearing, as soon as J.K. and M.K. moved out of the ISD, "the Districts had no [further] obligation to provide a FAPE to J.K." (Id. at 10.) The Districts also contend that "since neither J.K. or M.K. resided within the state or boundaries of the Districts, M.K. lacked standing at the time of the initial request for hearing, and therefore the matter was appropriately dismissed by the LHO." (Id. at 10.)
The Districts' first claim, that they have no obligation to provide a FAPE to a child residing outside of the District, is undisputed. See, e.g., Wise v. Ohio Dep't of Educ., 80 F.3d 177, 182 (6th Cir.1996) (noting that the "IDEA places ultimate financial and supervisory responsibility for a child's special education and related services with the particular [local education agency] in which the parents reside").
In contrast, the Court finds the Districts' second contention, that M.K. lacked standing at the time of the initial request for hearing, open to question. To support their claim, the Districts cite to case law  primarily from the Eighth Circuit  that is, admittedly, on point. See, e.g., Smith v. *838 Special Sch. Dist. No. 1, 184 F.3d 764 (8th Cir.1999); Thompson v. Bd. of the Special Sch. Dist. No. 1, 144 F.3d 574 (8th Cir. 1998); PT v. Indep. Sch. Dist. No. 113, 29 IDELR ¶ 13 (Minn.1998). The Districts rely heavily upon Thompson, which centered on a Minnesota statute (it has since been repealed) that read, in relevant part: "an impartial due process hearing [shall be] initiated and conducted by and in the school district responsible for assuring that an appropriate program is provided." Minn.Stat. § 120.17, subbed. 3b(e) repealed by 2003 Minn. Sess. Law Serv. 1st Sp. Sess. Ch. 9 (HF 51) (West).
Looking to the above statute, the Thompson court held:
Thompson has not stated a cause of action under IDEA because his request for a review comes after he left the District previously responsible for his education.... If a student changes school districts and does not request a due process hearing, his or her right to challenge prior educational services is not preserved. Subsequent challenges to the student's previous education become moot because the new school district is responsible for providing a due process hearing.
144 F.3d at 578-79.
For its part, Michigan has adopted regulatory language quite similar to  if not more direct than  that found in the Minnesota statute. The pertinent section of the Michigan Administrative Code reads: "The hearing shall be arranged or conducted by the district of residence and the district of residence shall pay all direct costs incurred by the school district as a result of arranging or conducting the hearing." Mich. Admin. Code R. 340.1724(2). Despite the parallels between the Thompson case and this case in both the circumstances and the statutes, the Court declines to follow the Eighth Circuit with regard to this issue.
Initially, it is important to note that while a school district typically has no continuing obligation to provide FAPE to the child of a parent who has moved out of the district, a school district nonetheless may be required to compensate a student for any IDEA violations that occurred before the move. See Zobrest v. Catalina Foothills Sch. Dist., 509 U.S. 1, 5 n. 3, 113 S.Ct. 2462, 2464 n. 3, 125 L.Ed.2d 1 (1993); Neshaminy Sch. Dist. v. Karla B., No. 96-3865, 1997 WL 137197, at *5-6 (E.D.Pa. Mar.20, 1997); Bd. of Educ. of the City of New York, 26 IDELR ¶ 1326 (N.Y.1997).
In Neshaminy, which, as in the present case, involved a student seeking compensatory educational services from his prior school district, the court noted that "[c]ompensatory education imposes liability upon the school district to merely pay for services that they were required to pay for all along, but for whatever reason, the district improperly refused to do so." 1997 WL 137197, at *5. The court went on to say that if compensatory education were not "available for a student who has moved from the school district after he has already been deprived of a FAPE ... then a school district could simply stop providing required services to a student with the underlying motive of inducing this student to move from a district, thus removing any future obligation under [the] IDEA which the district may owe to the student." Id. *6.
The Districts do not dispute the availability of compensatory educational services when a school district has denied a student FAPE. Given the above posture, the Court finds no reason that a district should deny a student his right to a due process hearing regarding compensatory educational services simply because the student requested his hearing after, rather than prior to, moving from the district, *839 particularly when the district already has adequate notice of the claims against it.[3]
The Districts ask the Court to interpret the Michigan statutory language to mean that only one's current district of residence can provide a due process hearing, regardless of other circumstances. However, to do so would result in at least a few potentially absurd outcomes. For example, under the Districts' reading, the student's new school district might be required to arrange, conduct, and pay for a due process hearing related to allegations that the previous school district violated the IDEA and owes the student compensatory educational services. See Mich. Admin. Code R. 340.1724(2). The MDE surely did not intend such a result. In addition, the Districts' interpretation would mean that a violating district in Grand Rapids, Michigan, for example, could grant a hearing and, ultimately, compensatory educational services to a student who requested her hearing one day before moving to Honolulu, Hawaii, but a student who requested his hearing one day after moving from the same violating district to Holland, Michigan would not receive even a hearing in the Grand Rapids district. As SRO Beekman properly noted, "The right to a hearing under [the] IDEA is too significant to be barred [simply because the student filed the request after moving from the district,] when [the] IDEA itself and its regulations fail to contain any express requirement of this type. Nor does MMSEA or our state's special education rules." (SRO Decision at 19.)
The Court concludes that the language at issue  "[t]he hearing shall be arranged or conducted by the district of residence"  simply means that if one wants to discuss a hearable matter with one's district of residence, that district is responsible for arranging, conducting, and paying for a due process hearing. Mich. Admin. Code R. 340.1724(2). It is not a jurisdictional bar against requesting a due process hearing in one's former district for incidents that occurred while a resident of that district. In this case, the dispute at issue relates to alleged violations that occurred while M.K. and J.K. were residents of the District. Therefore, the Districts' argument regarding mootness is rejected, and the Court concludes that J.K. is entitled to a due process hearing in the District.

Conclusion
For the foregoing reasons, the Court will deny the Districts' motion for judgment on a closed record. The Court will enter judgment on a closed record for Defendants/Appellees and affirm the decision of the state review officer.
An Order consistent with this Opinion will be entered.
NOTES
[1] The parties stipulated that M.K. and J.K. were residents of the District from September 2000 to at least April 24, 2001.
[2] While valuable for consideration, the decision of a federal district court, like the decision in Kuszewski, binds neither the SRO nor this Court.
[3] As for the Districts' concern that providing compensatory educational services to a student in Indiana will be impractical if not impossible, the Court reiterates SRO Beekman's opinion that the ISD "would have the ability to provide such services to a student outside the District by contracting with the student's new resident district (even if in another state) or a private entity near the student in order to fulfill its obligations under [the] IDEA." (SRO Decision at 17 n. 9.)